BALTIMORE DAIRY LUNCH, Inc., a corporation, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15474.

United States Court of Appeals Eighth Circuit.

April 12, 1956.

William R. Busch, St. Paul, Minn. (Joseph A. Maun and Bundlie, Kelley and Maun, St. Paul, Minn., on the brief), for appellant.

C. Guy Tadlock, Attorney, Department of Justice, Washington, D. C. (Charles K. Rice, Acting Asst. Atty. Gen., Lee A. Jackson, Harry Baum, and Davis W. Morton, Jr., Attorneys, Department of Justice, Washington, D. C., and George E. MacKinnon, U. S. Atty., St. Paul, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by Baltimore Dairy Lunch, Inc., plaintiff below and hereinafter called taxpayer, from final judgment of the District Court denying its claim for refund of additional income, declared value excess profits and excess profits taxes for the year 1943, alleged to heve been erroneously assessed and collected. The additional tax assessed was paid by the taxpayer. Claim for refund was filed and denied. This court has jurisdiction under 28 U.S.C. § 1291.

The taxpayer is a Minnesota corporation organized in 1935. W. P. Owens, treasurer and general manager, was paid a salary of $16,621.68 in 1943, which salary was claimed by the taxpayer as a deduction from gross income in its federal tax return. Upon audit of the tax return the Commissioner determined that only $7,600 of the salary paid Owens constituted a reasonable allowance for services rendered by Owens. The District Court agreed with the Commissioner and dismissed the taxpayer's suit for refund.

The taxpayer's principal contention is that the District Court erred in its determination that reasonable compensation for the services rendered by Owens in 1943 did not exceed $7,600. The burden is upon the taxpayer to demonstrate that the decision of the District Court is clearly erroneous. The fact that an appellate court might reach a different conclusion on disputed facts is not sufficient reason for reversal. A judgment is clearly erroneous when there is no substantial evidence to support it, when it is against the clear weight of the evidence, or when it is induced by an erroneous view of the law. Pendergrass v. New York Life Ins. Co., 8 Cir., 181 F.2d 136, and cases cited therein. In United States v. United States Gypsum Co., 333 U.S. 364, at page 395, 68 S.Ct. 525, at page 542, 92 L.Ed. 746, the finding of the trial court was found to be clearly erroneous, the Supreme Court stating:

"* * * A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

See also Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

Taxpayer contends that it is entitled to have the salary paid Owens deducted from its gross income pursuant to the provisions of section 23 of the Internal Revenue Code of 1939, 26 U.S.C. § 23, which reads:

"§ 23. Deductions From Gross Income.

"In computing net income there shall be allowed as deductions:

"(a) Expenses

"(1) Trade or business expenses.

"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *."

The issue of reasonableness of the compensation deduction is one of fact. Heil Beauty Supplies, Inc., v. Commissioner, 8 Cir., 199 F.2d 193; Commercial Iron Works v. Commissioner, 5 Cir., 166 F.2d 221.

We now look to the evidence offered by the parties to support their contentions.

The only direct evidence offered by the Government on the issue of the reasonableness of the salary deduction claimed is that of Internal Revenue Agent Polk who audited taxpayer's return. As to Polk's testimony the trial court states:

"He frankly admitted his lack of qualification to testify as an expert on the question of salaries in the restaurant business."

In the face of this statement by the court, which is fully supported by the record, little if any weight can be accorded Polk's testimony on the issue of the reasonableness of the salary paid.

Paul Whitcomb, a son of the national founder of the Baltimore Dairy Lunch restaurants, and W. P. Owens formed a partnership about 1915 for operating Dairy Lunch type of restaurants in the Minneapolis area. The business was incorporated in 1935. One hundred shares of stock were issued, 45 each to Whitcomb and Owens, and 5 shares to Mrs. Owens and 5 shares to Whitcomb's mother. Whitcomb lived in the east, but came to Minneapolis a number of times each year to advise as to the restaurant operations. He sold out to Owens in the latter part of 1943, and thereafter Owens was the owner of all of taxpayer's stock except for 5 shares held by Mrs. Owens. In evidence is a contract dated in 1935 between taxpayer and Owens fixing Owens' salary at $7,636.72 per annum, such salary to remain in effect until altered by a majority vote of the directors. Owens' testimony is that this agreement was entered into after a study of salaries prevailing in similar businesses at the time of the contract. There was also a contract for payment of $6,500 per annum to Whitcomb. In the record by stipulation is the following table showing taxpayer's gross sales, net income, and Owens' salary from 1935 through 1946:

| "Year | Gross Sales | Net Income | Owens' Salary |
|---|---|---|---|
| 1935 | $30,606 | ($3,110) | $ 3,524 |
| 1936 | 72,643 | ( 2,003) | 7,636 |
| 1937 | 66,702 | ( 4,215) | 7,636 |
| 1938 | 66,505 | ( 3,933) | 7,636 |
| 1939 | 63,697 | ( 824) | 5,277 |
| 1940 | 66,074 | ( 2,453) | 7,487 |
| 1941 | 65,323 | ( 3,091) | 6,364 |
| 1942 | 93,027 | ( 1,799) | 9,974 |
| 1943 | 98,425 | ( 5,242) Note 2 | 16,621 |
| 1944 | 56,215 | ( 1,044) | 7,010 |
| 1945 | 51,083 | ( 6,944) | 7,600 |
| 1946 | 65,541 | 6,066 | 7,600 |

Note 1—Figures in parentheses indicate loss.

Note 2—After adjustment of Whitcomb's salary to amount allowed by the Commissioner as a deduction, the net taxable income would be $3,736.

Note 3—No dividends were paid in any year shown."

During the period from 1935 through 1942 Whitcomb drew a salary of about $1,100 a year less than that paid Owens. In 1943 Whitcomb was paid $11,479. The Commissioner determined all above

$2,500 of the 1943 salary to be unreasonable, and such determination has been accepted by the taxpayer. The propriety of this adjustment is not involved directly on this appeal.

Owens, on behalf of the taxpayer, testified that he had been connected with the Dairy Lunch business continuously since 1902, starting out as a bus boy and rising to unit manager by 1905. The business of the taxpayer is the operation of restaurants in the nature of cafeterias, serving sandwiches, soups, hot foods, beverages, and other items. The food is picked up at the counter by the customers and taken by them to chairs equipped with an arm rest which serves as a table. Owens was responsible for the management of taxpayer's business. He had charge of employment, training and supervision of all personnel, the purchase of food and supplies, and the control of food preparation at each restaurant. In 1943 taxpayer operated four restaurants, one of which was open twenty-four hours a day, seven days a week, the other three operating from 6 A. M. to 6 P. M. or later, and two of these being open seven days a week. In 1943 help became scarce due to war conditions. Two of Owens' sons who had been a big help to him and who had worked for taxpayer full time for three years and one year, respectively, went into the service and were not replaced. Owens testified in part:

"The operation of the business in 1943 was very difficult and we had quite a time to get through. I couldn't replace the good help I was losing because it wasn't available, and the little help I could pick up required much attention. I was forced to increase my working hours in order to try to keep the business going. I worked anywhere from 11 to 15 hours a day through 1943. * * * I considered myself on duty seven days a week because there was always something coming up and I had to look after it. A good part of the time I had to take over the cooking because of loss of help.

* * * Usually my day started at 6:00 o'clock or earlier. On some days it would be earlier because I would get down to see if the locations were going to open, and in several instances helped them open. If certain help didn't show up, then I'd have to try to get other help, and at times I'd move help from one place to another. Much of the time during 1943 help didn't show up. They didn't give any notice, they just didn't show up. Several times I had to take over their places until I could get a replacement. * * * "

Owens at the time of payment of the 1943 salary was in complete control of the taxpayer corporation. Owens' testimony is that he fully earned the salary paid him. His testimony as to the value of his services is corroborated by Turnbell who had spent thirty years in the restaurant business, had served three years as president of the Minnesota Restaurant Association, and had prepared for national publication articles on costs, salaries, and motion study. Upon the basis of a profit and loss statement showing the total salary of Owens in the amount paid him in 1943, such statement, however, having been adjusted to show the elimination of Whitcomb's salary above $2,500, Turnbell expressed the opinion that there was good control of expenses in 1943, stating further:

"It looks like you could read the books and want to buy the operation. If this was my business and he was managing it for me, I would be satisfied with the return at first glance."

He also expressed the opinion that Owens' salary was reasonable in comparison with his own salary for managing a larger restaurant open only five days a week from 7:30 A. M. to 4:30 P. M. Turnbell's testimony is somewhat weakened by cross-examination, particularly on the question of the exact amount of salary that would be reasonable and the standards to be applied in making the determination.

■ The Government takes the position that even if taxpayer's testimony as to reasonableness of salary were uncontradicted, the trial court is not bound to accept opinion testimony, expert or otherwise, as to the reasonableness of salary involved, citing Heil Beauty Supplies, Inc., v. Commissioner, supra, and Commercial Iron Works v. Commissioner, supra, and other cases. It is doubtless true that the trier of facts is not compelled to believe any witness merely because his testimony is uncontradicted. Noland v. Buffalo Ins. Co., 8 Cir., 181 F.2d 735, 738. However, the foregoing rule is not applicable to the facts in this case. The trial court did not disbelieve the taxpayer's testimony as to the additional burdens placed upon Owens in 1943. As to this the trial court found:

> "As a result of a shortage of labor and the constant turnover in employment and the loss of two sons who were full-time employees and who had been employed in the business respectively one and three years, going into the service and who were not replaced, Owens was required to work long hours in 1943. He worked from eleven to fifteen hours a day during that year and while not working such hours seven days a week he considered himself on call at all times. Although the volume of Owens' work increased in 1943, the nature of his duties remained unchanged."

The $7,600 annual salary was established for Owens in 1935. Since then, as reflected by the statement hereinabove quoted, the business has increased substantially in volume. It seems reasonably clear that the growing business and the shortage of competent help materially increased the demand for additional services upon the part of Owens. Whitcomb, who had shared to some extent in the management, sold out in the latter part of 1943, and since then all managerial duties fell upon Owens. We believe that the record fully justifies the conclusion that Owens was entitled to a substantial increase in his compensation.

The record establishes that the taxpayer was at all times a closely held corporation, and that after late 1943 taxpayer was completely controlled by Owens. Taxpayer has never paid a dividend. Operations in all years prior to 1943 were at a loss. A profit for 1943 was established after the Commissioner disallowed as a deduction from gross income substantial portions of the salaries paid Owens and Whitcomb. Prior to 1943 the salaries paid Owens and Whitcomb absorbed the entire profits.

■ The Government relies upon the foregoing circumstances to establish that the large salaries paid were a device to distribute profits in the form of salaries for the purpose of avoiding corporate taxes. Such evidence is doubtless pertinent on the issue of the reasonableness of the compensation. See Heil Beauty Supplies, Inc., v. Commissioner, supra, and Commercial Iron Works v. Commissioner, supra.

Many of the foregoing factors diminish in significance in the light of the fact that the corporation had a small capital and was a small corporation. The salaries paid the officials prior to 1943 had been paid pursuant to contracts of employment entered into in 1935. These salaries were never challenged before 1942. As shown by the table, hereinabove set out, less than the contract amount of salaries was paid in some of the years, apparently for the obvious reason that adequate funds were not available to pay the full amount.

We are convinced that the record in this case, when considered as a whole, clearly demonstrates that the taxpayer was fully justified in increasing the previously-established $7,600 salary of its key executive officer. Since such salary was fixed in 1935 the volume of taxpayer's business had greatly increased, reaching its peak in 1943. This increased business, combined with the lack of adequate competent help caused by war conditions, placed a substantially heavier burden on Owens. The trial court's decision that the reasonable value of Owens'

services did not exceed $7,600 is clearly erroneous.

■ Whether Owens established his right to the full $16,621.68 claimed is a question open to greater difficulty. There is, however, evidence to support such a claim. The taxpayer has by its evidence met the burden of overcoming the presumption of correctness of the Commissioner's finding. The Government has introduced no substantial evidence to show that the salary deduction claimed by taxpayer is unreasonable. Under such circumstances the decision of the trial court is clearly erroneous. R. P. Farnsworth & Co., Inc., v. Commissioner, 5 Cir., 203 F.2d 490; Mayson Mfg. Co. v. Commissioner, 6 Cir., 178 F.2d 115; J. H. Robinson Truck Lines, Inc., v. Commissioner, 5 Cir., 183 F.2d 739; Wright-Bernet, Inc., v. Commissioner, 6 Cir., 172 F.2d 343. In the Mayson Mfg. Co. case the court quotes with approval from Taylor & Co. v. Glenn, D.C.W.D.Ky., 62 F.Supp. 495, 499, the following language, 178 F.2d at page 121:

"* * * 'If the compensation received * * * was unreasonable for the services rendered, certainly the government could have produced some experienced witness * * * who would have said so. The lack of such evidence operates very strongly against the defendant's contention.'"

Also in the Mayson Mfg. Co. case, 178 F.2d at page 120, the court states:

"* * * The ascending scale of prices and the increased cost of living in 1943 resulted in materially increased compensation throughout industry generally. * * *"

We conclude that the $16,621.68 paid Owens in 1943 was reasonable compensation for services rendered, and that the trial court erred in dismissing taxpayer's petition and in failing to order a refund of taxes erroneously assessed and collected as the result of the Commissioner's failure to allow as a deduction from gross income the full salary paid Owens in 1943.

■ Taxpayer, as an additional ground for relief, asserts that it suffered a loss in 1945 which it is entitled to carry back to 1943. A loss in 1945 occurred only if taxpayer's issuance of its own promissory notes in 1945 to officers to cover part of their 1945 salaries, which notes were due and were paid in 1946, entitled taxpayer to salary deductions to the extent that the 1945 salaries were represented by such notes. Taxpayer was on a cash basis. The trial court held that the amount represented by the salary notes did not constitute a deductible expense in 1945. We agree with the trial court. The taxpayer's notes issued in 1945 in lieu of salaries, and not paid until 1946, did not constitute payments within the meaning of sections 23(a) (1) (A) and 43 of the Internal Revenue Code of 1939, 26 U.S.C. §§ 23(a) (1) (A), 43.

■ Income tax deductions depend upon legislative grace and are allowable only to the extent authorized by federal statutes. The tax statutes, rather than the local law, control in determining allowable deductions. Cleaver v. Commissioner, 7 Cir., 158 F.2d 342, 343; Hart v. Commissioner, 1 Cir., 54 F.2d 848, 851. It is a well established rule that in the case of a taxpayer on a cash basis the giving of the taxpayer's note is not the equivalent of cash such as to entitle the taxpayer to a tax deduction in the year the note was given, the note not being paid during such year. Helvering v. Price, 309 U.S. 409, 413, 60 S.Ct. 673, 84 L.Ed. 836; Eckert v. Burnet, 283 U.S. 140, 141, 51 S.Ct. 373, 75 L.Ed. 911; Cleaver v. Commissioner, supra; Quinn v. Commissioner, 5 Cir., 111 F.2d 372; Annotation, 4 A.L.R.2d 1223.

That part of the judgment determining that there was no loss in 1945 to carry back to 1943 is affirmed. As to the first issue hereinabove discussed, the judgment is reversed, and the case is remanded with directions to compute the

amount of refund to which taxpayer is entitled upon the basis of allowing taxpayer a deduction for the year 1943 for the full salary paid Owens in that year, and with the further direction to enter judgment for the amount found due.