**CAPITOL MARKET, LTD., Plaintiff,**

v.

**UNITED STATES of America and Vaughn W. Evans, District Director of Internal Revenue for the District of Hawaii, Defendants.**

**Civ. No. 1929.**

United States District Court
D. Hawaii.
July 13, 1962.

Carlsmith, Carlsmith, Wichman & Case, Honolulu, Hawaii, by H. William Burgess, Honolulu, Hawaii, for plaintiff.

Herman T. F. Lum, U. S. Atty., Dist. of Hawaii, Honolulu, Hawaii, for defendants.

TAVARES, District Judge.

## I

### NATURE OF CASE

This is an action by plaintiff to recover $16,037.74 paid as income tax and assessed interest for the calendar years 1955 through 1959, together with statutory interest thereon. Jurisdiction is conferred upon this court by Title 28, United States Code, Sections 1340 and 1346(a) (1).

## II

### THE THEORIES OF THE PARTIES

1. Plaintiff claims that the salaries of $9,600.00 each paid to its two officers for the years 1955 through 1959, inclusive, constitute reasonable compensation for corporate management services rendered and that the salaries are properly deductible as ordinary and necessary business expenses.

2. In addition, plaintiff claims that the automobile expenses and depreciation for the years 1955, 1956 and 1957 are properly allocable as business expenses. As to this second claim, so little emphasis was placed thereon during the trial of this matter, and the showing with respect thereto made by the plaintiffs is so minimal, that the court feels it insufficient to establish the burden of proof incumbent on plaintiff of showing that those particular disallowed automobile expenses and depreciation were reasonable. In fact, this issue was in effect abandoned by plaintiff. Hence the court finds in favor of the defendants as to such automobile expenses and depreciation.

## III

### THE ADMITTED FACTS

The following facts have been agreed upon by the parties and require no proof:

1. Plaintiff Capitol Market, Ltd., is a corporation incorporated May 12, 1932, under the laws of the State of Hawaii with its principal office and place of business in Honolulu, Hawaii.

2. Vaughn W. Evans is now, and since August 9, 1959, has been, the District Director of Internal Revenue for the District of Honolulu.

3. Mr. Fred W. Mahoney and Mr. James F. Small purchased 100% of the stock of plaintiff corporation in 1946 for $65,000.00. Since then and continuing to the present date, Mr. Mahoney and Mr. Small have each owned 50% of the stock and have served as President and Vice President-Treasurer, respectively, of plaintiff corporation.

4. As officers of the corporation, they were paid $9,600.00 each per year by plaintiff corporation during the years 1955 through 1959, inclusive.

5. Plaintiff filed timely corporate income tax returns for the calendar years 1955, 1956, 1957, 1958 and 1959. The returns reported tax liabilities of $6,316.18, $2,809.47, $688.77, $1,651.27 and $00.00, respectively, and all of said amounts were paid with the returns.

6. In each of the years above mentioned, the District Director made a determination that the compensation for the two officers should be limited to $5,000.00 each and therefore disallowed $4,600.00 of the deduction claimed for each.

7. The deficiency assessments made by the District Director were paid by plaintiff together with interest, as follows:

| Year | Deficiency Tax | Assessed Interest | Total |
|------|---------------|-------------------|-------|
| 1955 | $ 2,749.25 | $ 688.06 | $ 3,432.31 |
| 1956 | 2,964.76 | 558.71 | 3,523.47 |
| 1957 | 2,864.04 | 408.12 | 3,272.16 |
| 1958 | 2,760.00 | 227.70 | 2,987.70 |
| 1959 | 2,760.00 | 62.10 | 2,822.10 |
| | $14,094.05 | $1,939.69 | $16,037.74 |

8. The amounts indicated in paragraph 7 above for the years 1955 and 1956 were duly paid by plaintiff on May 11, 1960. The amounts so indicated for the years 1957, 1958 and 1959 were duly paid by plaintiff on August 1, 1960.

IV

FINDINGS OF FACT

On the first issue of the reasonableness vel non of the compensation paid to the officers Small and Mahoney, the court's decision is in favor of the plaintiff, for the reasons hereinafter stated.

■ Both parties have cited Mayson Mfg. Co. v. Commissioner, 6th Cir. 1949, 178 F.2d 115, and it contains perhaps as good a statement as can be found in any one decision outlining the factors and circumstances which should be taken into consideration in determining whether or not, in a given case, the compensation paid by a corporation to its officers is reasonable, so as to be allowable under the statute (§ 162 of the Internal Revenue Code of 1954, 26 U.S.C. § 162). In addition the authorities are all agreed, apparently, that the question is primarily one of fact and that each case must stand upon its own facts and circumstances. This case peculiarly illustrates that rule because neither the government, nor the plaintiff, nor the court, has been able to find any case on all fours with this one.

Besides the admitted facts enumerated supra, which the court, of course, incorporates by reference herein, and following generally the format suggested in the Mayson case supra, the court makes the following findings of fact.

1. *Qualifications of Officers:* James F. Small, Vice President and Treasurer, holds a Bachelor of Science Degree from the University of California with a major in accounting; after graduation he worked for some time on the staff of Cameron & Johnston, a large accounting firm in Honolulu; from 1934 to 1936 he was in charge of the Field Division of the Bank Examiner, Territory of Hawaii; in 1936 he successfully passed the American Institute of Accounting examination and became a Certified Public Accountant of the Territory of Hawaii; from 1938 to 1946 he was successively in charge of the Internal Audit Division of American Factors, Ltd., one of the major corporations in Hawaii, and then was Assistant in the Tax Department of that corporation, in which position he did special survey work involving investment analysis and other management duties; when he left American Factors in 1946 his annual salary was $10,000 a year plus annual

bonuses of over $2,000 and $3,000, or a total of $12,000 to $13,000 a year. His subsequent activities along with Mahoney, hereinafter mentioned, further indicate very high executive qualifications and ability.

Mr. Fred W. Mahoney, President and Secretary of the corporation, was a University of Washington graduate, with a degree in pharmacy; he came to Hawaii in 1936 as an agent and special representative of Wyeth, Inc., a mainland pharmaceutical company working through American Factors, Ltd., a local distributor for Wyeth, Inc.; as such he was responsible for opening up Hawaii as a sales area for Wyeth, Inc. As part of his work he acquired a wide acquaintance among doctors, druggists and related professions and established his ability to plan and carry out successful sales and promotion programs. Mr. Small testified that he had found Mr. Mahoney better equipped than anyone else to talk to the doctors, that he talked their language, and through him they were able to get doctors to come in to their building and to want to stay with them. Mr. Mahoney and Mr. Small demonstrated their promotional and executive ability in the formation of a partnership which purchased two drug stores in succession. When they became associated with Capitol Market, Ltd., in 1946, they were executives of proven standing and ability.

High qualifications of this type are one of the criteria for determining reasonableness of salary. Williams Co. v. Lambert, 51 A.F.T.R. 1728 (1956) affirmed, Williams v. United States, 5 Cir., 245 F. 2d 559 (1957).

In this connection the authorities cited in the plaintiff's Opening Brief at pages 5 to 6 appear to be relevant to support their position. The court agrees that Mr. Small's and Mr. Mahoney's experience with Capitol Market, Ltd., during the nine successful years of operation preceding the tax years here involved, added to their qualifications and value to the corporation. In this connection their credit and ability to obtain very substantial financing for the corporation, as testified to by Mr. Small and Mr. Desmond Stanley, Senior Vice President of First National Bank of Hawaii, further support their qualifications. In this connection it is to be noted that in large financial transactions these two officers lent their personal credit and pledged their personal assets for the benefit of the corporation.

2. *Nature, Extent and Scope of Officers' Work:* Some of the findings made under the previous subheading also apply to this subheading. In general, Mahoney and Small performed duties and functions ordinarily performed by corporate executives. This included the application of the highest kind of skill, experience and business judgment, including the authority to invest and totally commit the entire assets of the corporation, valued in excess of $600,000 as of the end of 1959; it also included seeking, evaluating and accepting or rejecting other major corporate investments [1] of which a substantial number were testified to by Mr. Small without contradiction; it also included the exercise of judgment in determining whether or not to make major alterations and improvements to the building, two of such major projects be-

[1]. In this connection the court finds that the corporate business included, not only the management of rental properties and the collection of rents, but also the business of seeking for and making additional investments. This is borne out, not only by the testimony of Mr. Small, but also by the corporate letterhead which always characterized the corporation as "An Investment Company" (Exhibit 1). The government's only attempt to counteract this evidence was the contention that in an earlier informal memorandum letter to Internal Revenue, prepared by a C.P.A. firm, and not by an attorney, no specific claim was made that the corporation was an investment company. This is insufficient to counteract the positive evidence of plaintiff. It does not strike the court as unnatural that an attorney engaged by taxpayer after informal efforts through plaintiff's C.P.A. had failed, should, after further investigation, present additional grounds to support his clients' case.

ing testified to as occurring during the period in question. Such investments as were finally consummated, either during or after the period in question, invariably turned out to be good and added in very substantial amounts to the net assets of the corporation. This, plus other duties and activities testified to by Mr. Small, Mr. Stanley, and Mr. Winstedt indicated the broadest possible range of executive responsibility and judgment, as well as an apparently very high degree of successful planning.

In addition to the general executive activities as testified by Mr. Small, these officers conducted many of the duties that might ordinarily be handled by a full-time manager and other personnel. These included building management services, being in the office the greater part of every working day, and portions of Saturdays, engaging in a law suit which was pending a long time, consideration of a possible reorganization, as stated above, the personal endorsement and assumption of corporate obligations, supervision of the Central Medical Building, billing and collection of rents from tenants, payment of routine bills for maintenance, salaries, etc., payment of various kinds of taxes, maintenance of bank account, ordering repair work and supervising same, supervising major alterations of the building, thereby saving very substantial amounts of architects' and contractors' fees, supervising janitorial services, personally accepting and seeing to complaints and the needs of tenants, soliciting of new tenants, writing their own rental agreements, and in general keeping the building in tip-top condition—a condition which this court believes it can judicially notice is most difficult to maintain through agents under absentee ownership; keeping of corporate books of account and other duties in connection with record keeping, corporate correspondence, etc.

This testimony is uncontradicted, and the only testimony the government put on was through an expert in building management who testified to what, in his opinion, a building management concern like his would charge for managing the properties. However, even this expert's testimony as to the cost of ordinary building management services failed to establish comparability with the services actually performed by these officers, which would be very substantially greater than those that would ordinarily be exercised by a building management concern of the type envisioned by Mr. Chaney. Moreover, the testimony of Mr. Chaney, when converted into the cost of some of the special services that would not ordinarily be included in building management, produced a total figure not substantially smaller than the total salaries paid to these two officers. Moreover, it should be remembered that even if the corporation had hired a building management organization to operate the business, it would still be justified in paying a substantial salary to its two top officers—they would not be expected to work free. The net impression received by this court from the total testimony was that the government failed to shake the picture of reasonableness proved by plaintiffs' testimony, by the incomplete testimony of one expert—incomplete in the sense of not covering the entire field of duties and responsibilities held and performed by the two officers.

3. *Size and Complexities of Business:* What has been said above also indicates that the size and complexity of the business here was not inconsiderable, notwithstanding Mr. Chaney's, as this court sees it, somewhat unrealistic testimony as applied to this concrete case. This was a business which grew from an investment of $65,000 to over $600,000 in the course of some ten years, in value of assets, and which produced a gross income from 1955 to 1959 ranging from some $63,000 in 1955 to some $82,000 in 1959, and an average yield on the investment for the five years in question as testified to by Mr. Small without contradiction, of 9.06% per year after expenses and income taxes.

4. *Comparison of Salaries Paid with Gross Income and Net Income:* While this is stated by some of the cases to be

one of the factors to be considered in determining the reasonableness or unreasonableness of salaries paid by a corporation, the cases fail to establish any particular percentage of the gross or net as a criterion. However, as this court sees it, bearing in mind the salaries paid to these officers previous to the years in question without objection by the government, and other circumstances mentioned in these findings, including the average net yield after salaries and income taxes, this court believes that the salaries paid have not been shown to be unreasonable.

5. *Prevailing General Economic Conditions:* So far as the evidence disclosed indicates, the prevailing general economic conditions in Hawaii during the years in question show nothing to indicate unreasonableness of the salaries paid. In this connection this court can take judicial notice of general wage rates prevailing in the community, including wage rates in business and government, from $250 to $400 a month for ordinary stenographers, and from $5,000 to $6,000 a year and more for stevedores. In the face of this type of prevailing compensation rates for ordinary employees, this court finds it difficult to hold that $800 a month for each of two top corporation executives would be excessive. In this case the court might also mention the testimony of an expert called by the plaintiff, Mr. Grant W. Canfield, Manager and Secretary-Treasurer of the Hawaii Employees Council, an expert in the industrial relations field, who testified to statistical and other studies, both nationwide and local, and who testified to the various considerations entering into the determination of rates of pay for corporate executives and others, and who testified to an opinion that the salaries in question were reasonable, even for corporate executives who were not top management, and supported even higher rates for top management. This testimony, which the court finds credible, indicates that the salaries paid to these two executives are well within the range considered reasonable for top corporate executives even of corporations with assets no larger than those of this company.

6. *Comparison of Salaries with Distribution to Stockholders:* The court finds that while actual distribution to stockholders in the way of dividends during the years in question was not made, there were good sound business reasons for this, including the necessity to make payments on mortgages and obligations of the company incurred in connection with new investments, and the investment of earnings in additional investments during a period of community growth justifying such action.

█ While such failure to pay dividends, particularly in the case of closely held corporations, is a circumstance calling for careful scrutiny, it is not conclusive. Baltimore Dairy Lunch v. United States (8 Cir. 1956), 231 F.2d 870, 872. The court believes that such scrutiny justifies the inference that the failure to pay dividends was due, not primarily to any desire or attempt to evade corporate taxes, but rather (1) to the justifiable purpose of building up the assets of the corporation in a period when it was reasonable to expect an added growth and (2) to the informal agreement of the officers and stockholders with the mortgagee, Prudential, not to pay dividends until the loan had been paid.

7. *Prevailing Rates of Compensation for Comparable Positions and Comparable Concerns:* This has already been covered in connection with points numbers 4. and 5. above.

8. *Salary Policy as to All Employees:* This particular item is probably not particularly pertinent here since there was but one employee other than the two officers, namely the janitor. In this case, however, it should again be noted that the compensation paid to these officers was all they got for their services, without the usual bonuses, stock options, pension rights and other fringe benefits accorded to most directors and corporation executives today as an incentive.

9. *In Case of Small Corporations with Limited Number of Officers, the Amounts*

*Paid in Previous Years:* It has already been noted above that in previous years this same taxpayer, without objection by the government, paid even higher salaries to its officers. The reduction in salaries was explained without contradiction by Mr. Small as due to an informal agreement with Prudential to reduce them so as to render the taxpayer better able to pay its loan.

■ 10. *Presumption as to Actions of Board of Directors:* The court agrees with the authorities which hold that the actions of a Board of Directors are normally entitled to a presumption that the salaries fixed are reasonable and proper. Here one does not have to rely upon the presumption, for the proof itself amply justified the reasonableness of the salaries paid under all the circumstances, considering the situation as a whole, which this court has done.

11. *Situation Considered as a Whole:* As stated above, no one factor is conclusive and this court has carefully considered every item testified to and every factor argued or testified to by either side and has come to the conclusion that the salaries paid are reasonable.

12. *Results:* This has already been considered above in connection with the other items discussed, which indicate that, notwithstanding the payment of these salaries, the results to the corporation have been eminently favorable. This is a strong factor among others in determining the reasonableness of the compensation under the authorities.

■ 13. *Presumption in Favor of Validity of Government's Actions:* Some argument has been made by the government as to the presumption in favor of the validity of the actions of the government in determining what is a reasonable allowance for expenses and what is unreasonable. This court has given due consideration to that presumption and finds that it has been amply overcome by affirmative evidence produced by the plaintiffs, which evidence has not been counteracted by the one expert witness produced by the government, but on the contrary has been strengthened by it. In this connection, it might be pointed out that, while there are highly competent experts and other qualified employees in the Internal Revenue Service, for some reason none of them was called as a witness. While it may be true that the presumption in favor of the government's action alone should be sufficient to justify prima facie such governmental action, it seems to this court that, once the taxpayer has produced substantial evidence in favor of such reasonableness, especially in a case involving so difficult and technical a question as this one, some qualified member of the Internal Revenue Staff should be called as a witness to inform the court fully as to the actual reasons which in fact impelled the government to make its findings, rather than to leave the matter to inferences and the argument of counsel only. See Baltimore Dairy Lunch, Inc. v. United States, supra, 231 F.2d 872.

## CONCLUSIONS OF LAW

■ 1. Any of the foregoing Findings of Fact which might qualify as Conclusions of Law are hereby adopted as conclusions of law. The court finds for the reasons hereinabove stated, that the salaries paid to the officers Mahoney and Small for the tax years 1955 through 1959, inclusive, were and are reasonable and allowable under Section 162(a) (1) of the Internal Revenue Code of 1954; that the deficiency assessments of additional taxes and interest based on the government's determination of $5,000 per year as the maximum annual compensation allowable to each of these two officers for the years in question were and are erroneous; and that judgment should be entered in favor of the plaintiff and against the defendants for the amounts paid by the plaintiff, together with statutory interest thereon.

2. Upon the second issue, that of the additional assessments based on disallowance of a portion of the automobile expenses and depreciation claimed by plaintiff, for the reasons above stated

judgment will be entered in favor of the defendants and against the plaintiff.

## ORDER

Let judgment issue in accordance with the foregoing findings of fact and conclusions of law.