## DON E. WILLIAMS CO. *v.* COMMISSIONER OF INTERNAL REVENUE

No. 75–1312.   Argued December 8, 1976—Decided February 22, 1977

*Marvin L. Schrager* argued the cause for petitioner. With him on the briefs was *Durward J. Long, Sr.*

*Deputy Solicitor General Jones* argued the cause for respondent. On the brief were *Solicitor General Bork, Assistant Attorney General Crampton, Stuart A. Smith, Leonard J. Henzke, Jr.,* and *David English Carmack.*

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

The issue in this federal income tax case is whether an accrual-basis corporate taxpayer, by delivering its fully secured promissory demand note to the trustees of its qualified employees' profit-sharing trust, is entitled to a deduction therefor under § 404 (a) of the Internal Revenue Code of 1954, 26 U. S. C. § 404 (a).[1]

---

[1] Section 404 (a), as amended by § 24 of the Technical Amendments Act of 1958, 72 Stat. 1623, reads in pertinent part:

"(a) General rule.

"If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, . . . such contributions . . . shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); but, if they satisfy the conditions of either of such sections, they

# I

The pertinent facts are stipulated. Petitioner, Don E. Williams Company (taxpayer), is an Illinois corporation with its principal office at Moline in that State. It serves as a manufacturers' representative and wholesaler for factory tools and supplies. It keeps its books and files its federal income tax returns on the accrual method of accounting and on the basis of the fiscal year ended April 30. Don E. Williams, Jr., president of the taxpayer, owns 87.08% of its outstanding capital stock; Joseph W. Phillips, Jr., vice president, owns 4.17% thereof; and Alice R. Williams, secretary-treasurer, owns 4.58%.

In November 1963, the taxpayer's directors adopted the Don E. Williams Company Profit Sharing Plan and Trust. The trustees are the three officers of the taxpayer and the First National Bank of Moline. The trust was "qualified" under § 401 (a) of the Code and thus, under § 501 (a), is exempt from federal income tax.

Near the end of each of its fiscal years 1967, 1968, and 1969, the taxpayer's directors authorized a contribution of approximately $30,000 to the trust. This amount was accrued as an expense and liability on the taxpayer's books at the close of the year. In May, the taxpayer delivered to the trustees its interest-bearing promissory demand note for the amount of the liability so accrued. The 1967 and 1968

shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year:

.          .          .          .          .

"(3) Stock bonus and profit-sharing trusts.

"(A) Limits on deductible contributions.

"In the taxable year when paid, if the contributions are paid into a . . . profit-sharing trust, and if such taxable year ends within or with a taxable year of the trust with respect to which the trust is exempt under section 501 (a), in an amount not in excess of 15 percent of the compensation otherwise paid or accrued during the taxable year to all employees under the . . . profit-sharing plan. . . ."

notes bore 6% interest and the 1969 note bore 8% interest. Each note was guaranteed by the three officer-trustees individually and, in addition, was secured by collateral consisting of Mr. Williams' stock of the taxpayer and the interests of Mr. Williams and Mr. Phillips under the plan. The value of the collateral plus the net worth of Alice R. Williams, a guarantor, greatly exceeded the face amount of each note.

Within a year following the issuance of each note the taxpayer delivered to the trustees its check for the principal amount of the note plus interest. Each check was duly honored.

In its federal income tax return filed for each of the fiscal years 1967, 1968, and 1969 the taxpayer claimed a deduction under § 404 (a) for the liability accrued to the trustees. On audit, the Commissioner of Internal Revenue, respondent here, ruled that the accruals and the deliveries of the notes to the trustees were not contributions that were "paid," within the meaning of § 404 (a). Accordingly, he disallowed the claimed accrual deductions and, instead, allowed deductions only for the checks[2] for the respective fiscal years in which they were delivered. These adjustments resulted in deficiencies of $15,162.87, $1,360.64, and $530.42, respectively, in the taxpayer's income taxes for the three years.

On petition for redetermination, the United States Tax Court, in a reviewed opinion with three dissents, upheld the Commissioner. 62 T. C. 166 (1974). In so doing, it adhered to its consistent rulings since 1949[3] to the effect that an

---

[2] Respondent acknowledges that a solvent taxpayer's issuance and delivery of a check is a contribution that is "paid," within the language of § 404 (a). Tr. of Oral Arg. 28–31. See *Dick Bros.* v. *Commissioner,* 205 F. 2d 64 (CA3 1953).

[3] *Logan Engineering Co.* v. *Commissioner,* 12 T. C. 860 (Kern, J., reviewed by the court with no dissents), appeal dismissed (CA7 1949); *Slaymaker Lock Co.* v. *Commissioner,* 18 T. C. 1001 (1952) (Bruce, J.), rev'd *sub nom. Sachs* v. *Commissioner,* 208 F. 2d 313 (CA3 1953); *Time Oil Co.* v. *Commissioner,* 26 T. C. 1061 (1956) (Withey, J.), remanded,

accrual-basis employer's contribution to its qualified em-
ployees' profit-sharing plan in the form of the employer's
promissory note was not something "paid," and therefore
deductible, under § 404 (a) of the 1954 Code or under the
predecessor § 23 (p) of the Internal Revenue Code of 1939.
With the taxpayer's case being subject to an appeal to the
United States Court of Appeals for the Seventh Circuit,
which had not yet ruled on the issue, the Tax Court declined
to follow decisions of the Third, Ninth, and Tenth Circuits
that had disagreed with the Tax Court in earlier cases.[4]
62 T. C., at 168.

---

258 F. 2d 237 (CA9 1958), supplemental opinion, 294 F. 2d 667 (1961);
*Wasatch Chemical Co.* v. *Commissioner,* 37 T. C. 817 (1962) (Fay, J.,
reviewed by the court with no dissents), remanded, 313 F. 2d 843 (CA10
1963). Memorandum decisions to the same effect are *Freer Motor Trans-
fer* v. *Commissioner,* 8 TCM 507 (1949), ¶ 49,124 P–H Memo TC (Kern,
J.); *Sachs* v. *Commissioner,* 11 TCM 882 (1952), ¶ 52,256 P–H Memo
TC (LeMire, J.), remanded, 208 F. 2d 313 (CA3 1953); *Lancer Clothing
Corp.* v. *Commissioner,* 34 TCM 776 (1975), ¶ 75,180 P–H Memo TC
(Scott, J.), on appeal to the Second Circuit, No. 76–4012; *Coastal Electric
Corp.* v. *Commissioner,* 34 TCM 1007 (1975), ¶ 75,231 P–H Memo TC
(Goffe, J.), on appeal to the Fourth Circuit, No. 75–2184. See Rev. Rul.
71–95, 1971–1 Cum. Bull. 130; Rev. Rul. 55–608, 1955–2 Cum. Bull. 546,
548. See also *Patmon, Young & Kirk* v. *Commissioner,* 536 F. 2d 142
(CA6 1976), concerning a cash basis taxpayer.

[4] *Sachs* v. *Commissioner,* 208 F. 2d 313 (CA3 1953) (negotiable interest-
bearing demand notes); *Time Oil Co.* v. *Commissioner,* 258 F. 2d 237, 240
(CA9 1958) (non-interest-bearing demand notes, said to present a
"close" question); *Wasatch Chemical Co.* v. *Commissioner,* 313 F. 2d 843
(CA10 1963) (unsecured interest-bearing five-year promissory notes).
Accord, *Advance Constr. Co.* v. *United States,* 356 F. Supp. 1267 (ND
Ill. 1972) (secured interest-bearing term promissory note).

The persistence of the Government in pursuing its position on an
issue of tax law has been noted before. *United States* v. *Foster Lumber
Co., ante,* at 54–55 (dissenting opinion). This time, however, the Gov-
ernment's position has been consistently accepted for more than 25 years
by the Tax Court. It thus has not encountered uniform judicial rejection
over a substantial period, as it had on the *Foster Lumber* issue.

On appeal, the Seventh Circuit also declined to follow its sister Circuits, and affirmed. 527 F. 2d 649 (1975). We granted certiorari to resolve the conflict. 426 U. S. 919 (1976).

## II

A. *The statute.* Under § 446 of the Code, 26 U. S. C. § 446, taxable income is computed under the accounting method regularly utilized by the taxpayer in keeping its books. Subject to that requirement, "a taxpayer may compute taxable income" under the cash receipts and disbursements method or, among others, under "an accrual method." As a consequence, the words "paid or accrued" or "paid or incurred" appear in many of the Code's deduction provisions.[5] The presence of these phrases reveals Congress' general intent to give full meaning to the accrual system and to allow the accrual-basis taxpayer to deduct appropriate items that accrue, or are incurred, but are unpaid during the taxable year.

Section 404 (a), however, quoted in n. 1, *supra,* stands in obvious contrast. It provides that "[i]f contributions are *paid* by an employer to . . . a . . . profit-sharing . . . plan," the contributions, subject to a specified limitation in amount, shall be deductible "[i]n the taxable year when *paid*" (emphasis supplied). The usual alternative words, "or accrued" or "or incurred," are missing, and their absence indicates congressional intent to permit deductions for profit-sharing plan contributions only to the extent they are actually paid and not merely accrued or incurred during the year. Congress, however, by way of addendum, provided a grace period for the accrual-basis taxpayer. Section 404 (a)(6) allowed a deduction for the taxable year with respect to a contribution on account of that year if it was a "pay-

---

[5] See, e. g., §§ 162 (a), 163 (a), 164 (a), 174 (a)(1), 175 (a), 177 (a), 180 (a), 182 (a), 212, 216 (a), and 217 (a). See also § 7701 (a)(25).

ment . . . made" within the time prescribed for filing that year's return.[6] Under § 6072 (b) of the Code, this period, for petitioner-taxpayer, was two and one-half months after April 30, the close of its fiscal year, or July 15.

B. *The legislative history*. This history, as is to be expected, is consistent with the theme of the statute's language. Section 404 is virtually identical with § 23 (p) of the 1939 Code, as amended by § 162 (b) of the Revenue Act of 1942, 56 Stat. 863. Committee reports at that time speak of an accrual-basis taxpayer's deferral of paying compensation and state that, if this was done "under an arrangement having the effect of a . . . profit-sharing . . . plan . . . deferring the receipt of compensation, he will not be allowed a deduction until the year in which the compensation is *paid*" (emphasis supplied). H. R. Rep. No. 2333, 77th Cong., 2d Sess., 106 (1942); S. Rep. No. 1631, 77th Cong., 2d Sess., 141 (1942).[7] This, however, would have created a computational problem for the accrual-basis taxpayer who wished to make the maximum contribution possible under the percentage limitations of the statute, see § 404 (a)(3)(A), n. 1, *supra*, but who would not be able to determine that figure until after the close of the taxable year. See Hearings

---

[6] Section 404 (a)(6), as it read prior to a 1974 amendment, provided:

"(6) Taxpayers on accrual basis.

"For purposes of paragraphs (1), (2), and (3), a taxpayer on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made not later than the time prescribed by law for filing the return for such taxable year (including extension thereof)."

Section 1013 (c)(2) of the Employee Retirement Income Security Act of 1974, 88 Stat. 923, amended this section to afford the same grace period to a cash-basis taxpayer.

[7] At least one witness at the time aptly described the law as having been "drafted in such a way that all corporations are put on a cash basis on the payment to trusts." Statement of Richard D. Sturtevant in Hearings before the Senate Committee on Finance on the Revenue Act of 1942, 77th Cong., 2d Sess., 465 (1942).

before the Senate Committee on Finance on the Revenue Act of 1942, 77th Cong., 2d Sess., 465 (1942). Accordingly, Congress provided the grace period, originally 60 days under § 23 (p)(1)(E) of the 1939 Code, as amended, 56 Stat. 865, for the accrual-basis taxpayer.

Six years later the House Committee on Ways and Means recommended an extension of the grace time and referred to the then-existing 60-day period for the deduction of "contributions *actually paid*" (emphasis supplied). H. R. Rep. No. 2087, 80th Cong., 2d Sess., 13 (1948). The Senate did not then go along. But in 1954 the grace period was lengthened to coincide with the period for filing the return, § 404 (a)(6) of the 1954 Code, and at that time a similar reference, "actually makes payment," was repeated in the legislative history. S. Rep. No. 1622, 83d Cong., 2d Sess., 55 (1954). See, *id.*, at 292, and H. R. Rep. No. 1337, 83d Cong., 2d Sess., A151 (1954).

The applicable Treasury Regulations since 1942 consistently have stressed payment by the accrual-basis taxpayer. See Reg. 111, § 29.23 (p)–1 (1943); Reg. 118, § 39.23 (p)–1 (d) (1953); Reg. § 1.404 (a)–1 (c), 26 CFR § 1.404 (a)–1 (c) (1975).[8] With the statute re-enacted in the 1954 Code, this

---

[8] Reg. § 1.404 (a)–1 (c) reads:

"Deductions under section 404 (a) are generally allowable only for the year in which the contribution or compensation is paid, regardless of the fact that the taxpayer may make his returns on the accrual method of accounting. Exceptions are made in the case of . . . and, as provided by section 404 (a)(6), in the case of payments made by a taxpayer on the accrual method of accounting not later than the time prescribed by law for filing the return for the taxable year of accrual (including extensions thereof). This latter provision is intended to permit a taxpayer on the accrual method to deduct such accrued contribution or compensation in the year of accrual, provided payment is actually made not later than the time prescribed by law for filing the return for the taxable year of accrual (including extensions thereof) . . . ."

administrative construction may be said to have received congressional approval. See *Lykes* v. *United States,* 343 U. S. 118, 127 (1952).

We thus have, in the life and development of the statute, an unbroken pattern of emphasis on *payment* for the accrual-basis taxpayer. Indeed, the taxpayer here concedes that more than mere accrual is necessary for the accrual-basis taxpayer to be entitled to the deduction. Tr. of Oral Arg. 17. The taxpayer would find that requirement satisfied by the issuance and delivery of its promissory note. To that aspect of the case we now turn.

## III

In the light of the language of the statute, its legislative history, and the taxpayer's just-mentioned concession, the controversy before us obviously comes down to the question whether the taxpayer's issuance and delivery of its promissory note to the trustees within the grace period, unaccompanied, however, by discharge of the note within that period, made the accrued contribution one that was "paid" within the meaning of § 404 (a). The obligation to make the contribution for the taxable year existed, and the liability was even formally recognized by the taxpayer by the issuance and delivery of its note of acknowledged value. But was all this a contribution "paid" to the profit-sharing plan?

Two decisions of this Court, although they concern cash-basis taxpayers, are of helpful significance. The first is *Eckert* v. *Burnet,* 283 U. S. 140 (1931). There a taxpayer had endorsed notes issued by a corporation which later became insolvent. The taxpayer and his partner took up the notes with the creditor by replacing them with their own joint note. The Court unanimously held that this did not entitle the cash-basis taxpayer to a bad-debt deduction for, as the Board of Tax Appeals observed, he had " 'merely

exchanged his note under which he was primarily liable for the corporation's notes under which he was secondarily liable, without any outlay of cash or property having a cash value.'" *Id.*, at 141. The second decision is *Helvering* v. *Price*, 309 U. S. 409 (1940). There the taxpayer argued that his giving a secured note to a bank in response to a guarantee gave rise to a deduction. The Court observed that the note "was not the equivalent of cash to entitle the taxpayer to the deduction," and concluded that the fact the note was secured made no difference in the result. "[T]he collateral was not payment. It was given to secure respondent's promise to pay" and "did not transform the promise into the payment required to constitute a deductible loss in the taxable year." *Id.*, at 413–414.[9]

The reasoning is apparent: the note may never be paid, and if it is not paid, "the taxpayer has parted with nothing more than his promise to pay." *Hart* v. *Commissioner*, 54 F. 2d 848, 852 (CA1 1932).

If, as was suggested, the language of § 404 (a) places all taxpayers on a cash basis with respect to payments to a qualified profit-sharing trust, the principle of *Eckert* and of *Price* clearly is controlling here. The petitioner argues, of course, that that principle is not applicable to the accrual-basis taxpayer. We are not persuaded. The statutory terms "paid" and "payment," coupled with the grace period and the legislative history's reference to "paid" and "actually paid," demonstrate that, regardless of the method of ac-

---

[9] Other courts have applied *Eckert* and *Price* to situations other than a claimed bad-debt deduction. *Cleaver* v. *Commissioner*, 158 F. 2d 342 (CA7 1946), cert. denied, 330 U. S. 849 (1947) (interest); *Jenkins* v. *Bitgood*, 101 F. 2d 17 (CA2), cert. denied, 307 U. S. 636 (1939) (loss); *Baltimore Dairy Lunch, Inc.* v. *United States*, 231 F. 2d 870, 875 (CA8 1956) (loss); *Guren* v. *Commissioner*, 66 T. C. 118 (1976) (charitable contribution); *Petty* v. *Commissioner*, 40 T. C. 521, 524 (1963) (Atkins, J., for seven judges, concurring) (charitable contribution).

counting, all taxpayers must pay out cash or its equivalent by the end of the grace period in order to qualify for the § 404 (a) deduction.

This accords, also, with the apparent policy behind the statutory provision, namely, that an objective outlay-of-assets test would insure the integrity of the employees' plan[10] and insure the full advantage of any contribution which entitles the employer to a tax benefit.

Other arguments advanced by the taxpayer are also unconvincing:

1. The taxpayer argues that because its notes are acknowledged to have had value, it is entitled to a deduction equal to that value. It is suggested that such a note would qualify as income to a seller-recipient. Whatever the situation might be with respect to the recipient, the note, for the maker, even though fully secured, is still only his promise to pay. It does not in itself constitute an outlay of cash or other property. A similar argument was made in *Helvering* v. *Price, supra,* and was not availing for the taxpayer there. See Brief for Respondent, O. T. 1939, No. 559, pp. 16–17.

2. The taxpayer suggests that the transaction equates with a payment of cash to the trustees followed by a loan, evidenced by the note in return, in the amount of the cash advanced. But

"a transaction is to be given its tax effect in accord with what actually occurred and not in accord with what might have occurred.

". . . This Court has observed repeatedly that, while a

---

[10] A similar policy applies to deductions for charitable contributions under § 170 (a) of the Code. These deductions, too, are limited to those the "payment of which is made within the taxable year," even though the particular taxpayer is on the accrual basis. See H. R. Rep. No. 1860, 75th Cong., 3d Sess., 19 (1938), referring to §§ 23 (o) and (q) of the Revenue Act of 1938, 52 Stat. 463, 464.

taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not . . . and may not enjoy the benefit of some other route he might have chosen to follow but did not." *Commissioner* v. *National Alfalfa Dehydrating,* 417 U. S. 134, 148–149 (1974).

See *Central Tablet Mfg. Co.* v. *United States,* 417 U. S. 673, 690 (1974).[11] What took place here is clear, and income tax consequences follow accordingly. We do not indulge in speculating how the transaction might have been recast with a different tax result.

3. Taxpayer heavily relies on the fact that three Courts of Appeals—the only courts at that level to pass upon the issue until the present case came to the Seventh Circuit, see n. 4, *supra*—have resolved the issue adversely to the Commissioner. We cannot ignore those decisions or lightly pass them by. Indeed, petitioner taxpayer has a stronger argument than the taxpayers in those cases because they concerned note transactions of somewhat lesser integrity, in the sense that the notes either bore a lower interest rate or no interest at all, or were less adequately secured. After careful review of those cases, however, we conclude that their analytical structure rests on two errors:

(a) The three Courts of Appeals, in considering § 404 (a), assumed, mistakenly we feel, that the word "paid" in the

---

[11] By § 2003 (a) of the Employee Retirement Income Security Act of 1974, 88 Stat. 971, § 4975 was added to the 1954 Code. It makes an employer's issuance of its promissory note to a qualified profit-sharing plan a "prohibited transaction" subject to penalty. See §§ 4975 (a), (b), and (c) (1) (B). See also H. R. Conf. Rep. No. 93–1280, p. 308 (1974). By this penalty imposition, Congress has reaffirmed the actual-payment requirement of § 404 (a), and strengthened its enforceability.

statute has the same meaning it possesses in § 267 (a).[12] The latter section disallows deductions by an accrual-basis taxpayer for certain items that are accrued but not yet paid to *related cash-basis* payees. The analogy the Courts of Appeals drew between § 404 (a) and § 267 (a) derives from two earlier cases, namely, *Anthony P. Miller, Inc.* v. *Commissioner*, 164 F. 2d 268 (CA3 1947), cert. denied, 333 U. S. 861 (1948), and *Musselman Hub-Brake Co.* v. *Commissioner*, 139 F. 2d 65 (CA6 1943), where it was ruled that an accrual-basis corporate taxpayer's delivery of a demand note to one of its officers for salary or to its controlling shareholder for royalties and interest effected a payment of those items under

---

[12] Section 267 relates to items that would be deductible under §§ 162 or 212 and reads:

"(a) Deductions disallowed.

"No deduction shall be allowed—

. . . .

"(2) Unpaid expenses and interest.

"In respect of expenses, otherwise deductible under section 162 or 212, or of interest, otherwise deductible under section 163,—

"(A) If within the period consisting of the taxable year of the taxpayer and 2½ months after the close thereof (i) such expenses or interest are not paid, and (ii) the amount thereof is not includible in the gross income of the person to whom the payment is to be made; and

".(B) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and

"(C) If, at the close of the taxable year of the taxpayer or at any time within 2½ months thereafter, both the taxpayer and the person to whom the payment is to be made are persons specified within any one of the paragraphs of subsection (b).

"(b) Relationships.

"The persons referred to in subsection (a) are:

. . . .

"(4) A grantor and a fiduciary of any trust . . . ."

Section 404 (a), on the other hand, concerns items specifically precluded as deductions under §§ 162 and 212.

§ 24 (c) of the 1939 Code (the predecessor of § 267 (a) of the 1954 Code).[13] But this interpretation of the term "paid" in § 267 (a) necessarily resulted from the desirability of affording simultaneously consistent treatment to the deduction and to the income inclusion. The statute's purpose was to prevent the tax avoidance that would result if an accrual-basis corporation could claim a deduction for an accrued item its related cash-basis payee would not include in income until it was paid, if ever. See H. R. Rep. No. 1546, 75th Cong., 1st Sess., 29 (1937); S. Rep. No. 1242, 75th Cong., 1st Sess., 31 (1937). Because the recipient of the note was required to include its value in income at the time of receipt, disallowance of the deduction to the maker corporation sympathetically was deemed not to serve the underlying policy of § 24 (c) of the 1939 Code. *Musselman,* 139 F. 2d, at 68; *Logan Engineering Co.* v. *Commissioner,* 12 T. C. 860, 868 (1949). The term "paid" in the statute was thus used merely, and only insofar as, to insure that transactions between related entities received consistent tax treatment. This situation has no counterpart under § 404 (a), for the qualified plan is exempt from tax. A policy consideration that might call for equivalence on both sides of the income tax ledger plainly is not present. And one is not brought into being by the fact that the trustees must disclose the note in the information report required to be filed by § 6047 (a) of the Code.

(b) The three Courts of Appeals seemed to equate a promissory note with a check. The line between the two may be thin at times, but it is distinct. The promissory note, even when payable on demand and fully secured, is still, as

---

[13] *Celina Mfg. Co.* v. *Commissioner,* 142 F. 2d 449 (CA6 1944); *Commissioner* v. *Mundet Cork Corp.,* 173 F. 2d 757 (CA2 1949); *Akron Welding & Spring Co.* v. *Commissioner,* 10 T. C. 715 (1948), are to the same effect. See Rev. Rul. 55–608, 1955–2 Cum. Bull. 546, 548.

its name implies, only a promise to pay, and does not represent the paying out or reduction of assets. A check, on the other hand, is a direction to the bank for immediate payment, is a medium of exchange, and has come to be treated for federal tax purposes as a conditional payment of cash. *Estate of Spiegel* v. *Commissioner,* 12 T. C. 524 (1949); Rev. Rul. 54–465, 1954–2 Cum. Bull. 93. The factual difference is illustrated and revealed by taxpayer's own payment of each promissory note with a check within a year after issuance.

We therefore find ourselves in disagreement with the result reached by the Third, Ninth, and Tenth Circuits in their respective cases hereinabove cited. We agree, instead, with the Tax Court in its uniform line of decisions and with the Seventh Circuit in the present case. The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

MR. JUSTICE STEVENS, concurring.

MR. JUSTICE BLACKMUN's opinion for the Court, which I join, construes the word "paid" to require the delivery of cash or its equivalent. In my judgment, that construction best serves the statutory purpose of protecting the integrity of pension plans because the employer and the pension trust are often controlled by the same interests.

MR. JUSTICE STEWART, with whom MR. JUSTICE POWELL joins, dissenting.

The Court says that § 404 (a) "places all taxpayers on a cash basis with respect to payments to a qualified profit-sharing trust." *Ante,* at 578. This assumption is the keystone of today's decision, for only by treating the petitioner as a cash-method taxpayer can the Court apply the rule of *Eckert* v. *Burnet,* 283 U. S. 140, and *Helvering* v. *Price,* 309 U. S.

409, to require the petitioner to have paid out "cash or its equivalent" in order to be allowed a deduction. But the assumption is just that—an *assumption* that is not and cannot be supported.

It is true, as the Court observes, *ante*, at 574–577, that the statute, the applicable committee reports, and the underlying Treasury Regulations all emphasize that the employer's contribution must be "paid"; [1] mere accrual of the obligation is therefore insufficient to obtain the deduction. The question in this case, however, is whether the word "paid" requires an accrual-basis taxpayer to part with "cash or its equivalent" or whether the obligation may be "paid" by the delivery of a negotiable, interest-bearing, fully secured demand note. When the Court responds by stating baldly that "the language of § 404 (a) places all taxpayers on a cash basis," it begs rather than answers the question. [2]

This question-begging assumption is at odds with the long-accepted principle that cash- and accrual-basis taxpayers should not be lumped together when applying statutes such as this one. The case of *Musselman Hub-Brake Co.* v. *Commissioner*, 139 F. 2d 65 (CA6), expressed this principle more than 30 years ago. There an accrual-method corporation sought a business-expense deduction for patent royalties and interest paid to its controlling shareholder in the form of demand promissory notes. The applicable statute, as in the present case, required business expenses to be "paid" in the taxpayer's taxable year or within two and one-half months thereafter. Internal Revenue Code of 1939, § 24 (c). The

[1] In some instances the language is *"actually* paid," see, *e. g.,* H. R. Rep. No. 2087, 80th Cong., 2d Sess., 13 (1948) (emphasis added), quoted *ante,* at 576, an embellishment that adds nothing of substance.

[2] The only thread of support the Court finds is the statement of one witness before the Senate Committee on .Finance that § 404 (a) puts corporations "on a cash basis on the payment to trusts." *Ante,* at 575 n. 7. We have recently noted the gossamer quality of that kind of legislative history. *Ernst & Ernst* v. *Hochfelder,* 425 U. S. 185, 204 n. 24.

court held that the deduction was permissible, noting that *Eckert* and *Price* "are not in point here" because in each case "[t]he method of accounting followed by the taxpayer . . . was the premise of . . . decision." 139 F. 2d, at 69. The court explicitly rejected the contention that the requirement of actual payment "put an accrual taxpayer on a cash basis," and held that such a restrictive interpretation of the word "paid" was unnecessary to achieve the congressional purpose.

The *Musselman* decision, and the reasoning that underlies it, have been approved by the Courts of Appeals in case after case, in connection with both § 404 (a) and other analogous provisions of the Internal Revenue Code. See, *e. g., Fetzer Refrigerator Co.* v. *United States,* 437 F. 2d 577 (CA6); *Wasatch Chemical Co.* v. *Commissioner,* 313 F. 2d 843 (CA10); *Time Oil Co.* v. *Commissioner,* 258 F. 2d 237 (CA9); *Sachs* v. *Commissioner,* 208 F. 2d 313 (CA3); *Commissioner* v. *Mundet Cork Corp.,* 173 F. 2d 757 (CA2); *Anthony P. Miller, Inc.* v. *Commissioner,* 164 F. 2d 268 (CA3); *Celina Mfg. Co.* v. *Commissioner,* 142 F. 2d 449 (CA6); accord, *Advance Constr. Co.* v. *United States,* 356 F. Supp. 1267 (ND Ill.). See also *Hart* v. *Commissioner,* 54 F. 2d 848, 851–852 (CA1). The Court of Appeals for the Sixth Circuit considered the doctrine most recently in *Patmon, Young & Kirk* v. *Commissioner,* 536 F. 2d 142 (1976), a case decided after the decision of the Seventh Circuit that the Court affirms today. The court in *Patmon,* relying on *Eckert* and *Price,* denied a § 404 (a) deduction to a cash-basis taxpayer that had contributed a guaranteed demand note to its profit-sharing trust. The court was careful, however, to distinguish accrual-method taxpayers, noting that "the word 'paid' [must] be defined in the context and in light of the purpose of the particular statute in which it is used." 536 F. 2d, at 144.

In short, until the Court of Appeals for the Seventh Circuit held as it did in the present case, no federal appellate

court had ever held that use of the word "paid" in a statute such as § 404 (a) requires that cash- and accrual-basis taxpayers be treated identically.[3] This unanimity was soundly supported by a long-established principle of tax law—that the construction of words in a tax statute should be in "harmony with the statutory scheme and purpose." *Helvering* v. *Hutchings*, 312 U. S. 393, 398. Under this principle, there is no reason to suppose that the word "paid" means the same thing with respect to taxpayers who use different accounting methods, and every reason to suppose it does not.

The *Eckert* and *Price* cases, requiring the payment of "cash or its equivalent," were explicitly premised on the taxpayers' use of the cash method. See *Eckert,* 283 U. S., at 141 ("For the purpose of a return upon a cash basis, there was no loss in 1925"); *Price,* 309 U. S., at 413 ("As the return was on the cash basis, there could be no deduction in the year 1932 . . .").[4] Indeed, their focus explains their result. Because the returns at issue were filed on a cash basis, the

---

[3] The invocation of the "re-enactment doctrine" in the Court's opinion today, *ante,* at 576–577, is therefore dramatically misplaced. The "administrative construction" of § 404 (a) that supposedly received congressional approval when the 1954 Code was enacted was in fact nothing more than an administrative rehash of the statutory language that did not illumine its meaning. The regulation, Treas. Reg. § 1.404 (a)–1 (c), 26 CFR § 1.404 (a)–1 (c) (1975), refers simply to "actual payments" and restates the statute's requirements that the employer's contribution to the profit-sharing plan be "paid" before a deduction may be had. That the contribution must be "paid" whether the taxpayer files his returns on the accrual or cash method of accounting of course does not bear on the question whether the word "paid" means the same thing in both situations. The answer to this question in the appellate courts as of 1954 was clearly "no." Thus, the "re-enactment doctrine" not only fails to support the Court's decision in this case, but cuts strongly against it.

[4] The Court correctly notes that *Eckert* and *Price* have been applied to claimed deductions for items other than bad debts, such as interest and business losses, *ante,* at 578 n. 9, but all of the cases that the Court cites involved cash-basis taxpayers.

thrust of the inquiry was upon determining what the taxpayers had surrendered. They had given up nothing of immediate cash value *to them,* and so it would have been inconsistent with fundamental principles of cash-method accounting to have allowed them deductions.

In this case, however, the taxpayer seeking the deductions keeps its books on the accrual basis; no accounting principles require that the inquiry be focused on the value to it of the property it surrenders or that its payments be made in cash or the equivalent. In such a situation I think "the word 'paid' [must] be defined in the context and in light of the purpose of the particular statute in which it is used." *Patmon, Young & Kirk* v. *Commissioner, supra,* at 144. That is, the normal rules governing accrual-method accounting should apply except as necessary to achieve the purpose of § 404 (a). Since that purpose is to protect the employees' trust fund and to ensure that the fund receives the "full advantage" of the employer's deductible contribution, *ante,* at 579, the focus is properly on the value *to the trust* of what it has received. Here it received tangible, interest-bearing, fully secured demand notes, upon which the trust concededly could have obtained full face value at any local bank. The notes would have been "income" to any cash-basis taxpayer, and the trust was required to report them as such. *Ante,* at 582. Indeed, the Commissioner concedes that the petitioner could have obtained its deductions had it tendered to the trust identical notes of a different company, for such a transaction would have been treated as a deductible transfer of property. See *Colorado Nat. Bank of Denver* v. *Commissioner,* 30 T. C. 933.

Plainly, then, neither the purpose of the statute nor any principles of cash-basis or accrual-basis accounting require or even suggest a construction of the word "paid" in § 404 (a) to deny this accrual-method taxpayer a deduction because it did not part with "cash or its equivalent" during the statutory

period. As the Court says, the term "paid" in § 404 (a) was used to "insure the integrity of the employees' plan and insure the full advantage of any contribution which entitles the employer to a tax benefit." *Ante,* at 579. That purpose was wholly served by the delivery of negotiable, interest-bearing, fully secured demand notes.[5]

I would reverse the judgment of the Court of Appeals.

---

[5] The Court's construction of § 404 (a) is inconsistent with its analysis of § 267 (a). The term "paid" in § 267 (a), the Court acknowledges, was used "merely, and only insofar as" necessary to accomplish that section's purpose of ensuring consistent tax treatment of transactions between related entities. *Ante,* at 582. The implication is that normal accounting principles continue to apply to the full extent that their application is consistent with that purpose, and the cases the Court cites so hold. *Anthony P. Miller, Inc.* v. *Commissioner,* 164 F. 2d 268 (CA3); *Musselman Hub-Brake Co.* v. *Commissioner,* 139 F. 2d 65 (CA6). The Court never explains why the same logic should not inform the construction of § 404 (a).