**Gary WEISBART and Halene Weisbart, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 76–1605.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 28, 1977.

Decided Oct. 31, 1977.

---

Gilbert Goldstein, of Goldstein, Armour & Lonnquist, P.C., Denver, Colo., for petitioners-appellants.

F. Arnold Heller, Atty., Tax Div., Dept. of Justice, Washington, D. C., (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews and Leonard J. Henzke, Jr., Attys., Tax Div., Dept. of Justice, Washington, D. C., on the brief), for respondent-appellee.

Before SETH and DOYLE, Circuit Judges, and STANLEY,* District Judge.

WILLIAM E. DOYLE, Circuit Judge.

This is an action which was filed in the United States Tax Court by the appellants. In it they sought a determination as to deficiency of income tax for the year 1968. The Commissioner had disallowed a deduction in the amount of $100,106 claimed by the taxpayer for the year 1968. The Tax Court generally upheld the Commissioner and determined that there was a deficiency of income tax of the petitioners for the taxable year 1968 in the amount of $64,328.85. The present appeal involves the deductibility of certain feed expenses by appellants during the year 1968. We here consider whether the particular feed purchase arrangement by appellants was effective in providing a deduction for the year of the particular contract and purported payment.

Appellant Gary Weisbart is the 100% owner of the G. Weisbart and Company, Inc. This company was incorporated in August 1968 for the purpose of buying and selling cattle and was qualified under the Small Business Administration provisions of the Internal Revenue Code. Gary Weisbart is also the owner of 92% of the stock of the 7A Land and Feeding Company, a Colorado corporation, which was incorporated on August 4, 1968.

The controverted transaction was this: On December 16, 1968, G. Weisbart and Company purchased $100,106 worth of feed from 7A Land and Feeding Company at cost to 7A. In payment of this it gave to 7A $100,106 worth of contract rights to purchase cattle. A dispute exists between the taxpayers and Commissioner as to the necessity for buying feed in the year 1968. An additional dispute exists as to how much of it was used in 1968, although there can be no question but that a major portion was not used until 1969. The 7A Company did not take advantage of the contract rights that it had in the transaction, and on March 31, 1969, Weisbart and Company repurchased all of the contract rights (for the purchase of cattle) at the original price, i. e. $100,106.

* Of the District of Kansas, sitting by designation.

G. Weisbart and Company was on a cash method for income tax purposes, and on its 1968 return it claimed a deduction for the purchase price of the feed. The Commissioner rejected this.

The Tax Court ruled for the Commissioner. *See Weisbart v. Commissioner*, T.C. Memo 1976–54. Based on its findings that there had been no genuine transfer of the contract rights as a result of the December 16, 1968 assignment by Weisbart and Company to 7A, and that 7A had not acquired any beneficial interest in the contract rights assigned, the Tax Court concluded that there had not been any intention that 7A would exercise the contract rights; that the parties always intended the March 31, 1969 repurchase by Weisbart and Company. Since the actual payment had been made in 1969, the company being on a cash method was unable to deduct the payment in 1968.

There are two regulations which are to be considered. Treas.Reg. § 1.446–1(c)(1)(i) (1973) provides that in the case of a cash method taxpayer, the expenses are to be deducted in the year "actually made." The second regulation, § 1.461–1(a)(1) (1967), provides that under the cash method, deductions are generally to be taken into account for the taxable year in which paid. There is a further provision of this regulation which provides:

> If an expenditure results in the creation of an asset having a useful life which extends substantially beyond the close of the taxable year, such an expenditure may not be deductible, or may be deductible only in part, for the taxable year in which made.

One further relevant regulation, Treas.Reg. § 1.162–12(a) (1972), provides:

> The purchase of feed and other costs connected with raising livestock may be treated as expense deductions insofar as such costs represent actual outlay.

■ In maintaining that a payment was actually made in 1968, appellants cite state court cases which deal with the piercing of the corporate veil. These, however, do not apply. The question before us as to what constitutes a payment by a cash method taxpayer is a question of federal law and not state. It does not therefore depend on the relationship between the two corporations. Even if 7A and G. Weisbart and Company are independent entities, it was open to the Tax Court to conclude nevertheless that there was no genuine payment in 1968 as a result of the transfer of the contract rights, and the fact that Gary Weisbart was the owner of 92% of the stock of the 7A Corporation and the owner of 100% of the stock of G. Weisbart and Company supports the Tax Court's finding that the transfer of the contract rights was never intended to be permanent.

There is other evidence in support of the Tax Court's finding. The fact that the repurchase price was exactly the same as the original price is one such fact. This is significant because the value of contract rights such as this is subject to fluctuation. Also, if the transfer were real, it would have placed cattle under the ownership of the feed corporation, thereby defeating the purpose of the separate incorporation of the two companies. In support of the conclusion that the transfer was intended to be a temporary one is the fact that G. Weisbart and Company had a line of credit at the bank which was increased on December 20, 1968, a few days after the transaction, which fact refutes the contention that cash was unavailable, whereby the contract rights had to be used.

■ In our approach to a solution of the present problem, we are mindful that in taxation law the character of a taxpayer's transaction or arrangement is controlled by substance rather than form. *See, e. g., Shutler v. United States*, 470 F.2d 1143, 1146 (10th Cir. 1972), *cert. denied*, 411 U.S. 982, 93 S.Ct. 2275, 36 L.Ed.2d 959 (1973), and feigned transactions are to be disregarded. *Cf. Knetsch v. United States*, 364 U.S. 361, 366–67, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960); *Gregory v. Helvering*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935). Here the Tax Court's finding was that the parties at all times intended the 1969 repurchase and that the 1968 transfer of contract rights by G. Weisbart and Company was not genuine.

Findings as to what is substance in a transaction are to be treated as questions of fact. Thus the trial court's findings as to this are to be upheld unless clearly erroneous. *Highland Hills Swimming Club, Inc. v. Wiseman*, 272 F.2d 176, 179 (10th Cir. 1959).

Expenditures for livestock feed are not infrequently litigated in the tax deduction context. The arrangements of this nature which have been upheld have ordinarily involved payments in cash. In fact, cash payment cases have been sufficiently frequent so as to provide an indicator of the trend to respect actual cash prepayment. Valid business reasons attending the prepayment also are viewed with some favor in deciding whether the transaction is a genuine purchase. Thus in *Cravens v. Commissioner*, 272 F.2d 895 (10th Cir. 1959), $50,000 in cash was paid in 1953 for feed which was to be delivered in 1954. Because there were valid business reasons for buying the feed in advance such as fear of drought and consequent unavailability of feed, the court held that the expense was deductible in 1953. The court also found that the payment was not in the nature of a security deposit. *Cravens*, however, could not rule this case because even if Weisbart were able to demonstrate valid business reasons for the 1968 purchase, the cash payment would serve to distinguish *Cravens* from our case.

Again, in *Mann v. Commissioner*, 483 F.2d 673 (8th Cir. 1973), the taxpayer was allowed to deduct a prepaid cash amount for feed. The court there noted that a binding contract had been made in the year of the payment. As in *Cravens* the taxpayer had made full payment during the year in which the deduction had been taken. This was held not to have been a mere security deposit.

In the absence of a binding contract the deduction was denied in *Shippy v. United States*, 308 F.2d 743 (8th Cir. 1962). It was there ruled that there was no binding contract; that there was merely a refundable security deposit.

In *John Ernst*, 32 T.C. 181 (1959), acq. 1959–2 C.B. 4, a cash method taxpayer paid cash for a fixed amount of feed which was to have been delivered in 1949 under a contract which allowed for price adjustments in accordance with rates prevailing at the time of delivery. The prepayment was there ruled to be deductible. Because it was nonrefundable the contract was binding.

It is to be observed also that the cash aspect appears to be less important than the finality of the payment. If it is revocable, the deduction can be denied. *See Eckert v. Burnet*, 283 U.S. 140, 51 S.Ct. 373, 75 L.Ed. 911 (1931). Here notes were rejected as a basis for a tax deduction on the basis that a cash method taxpayer can claim a deduction only for payments made in cash.

The Supreme Court opinion in *Don E. Williams Co. v. Commissioner*, 429 U.S. 569, 577–78, 97 S.Ct. 850, 51 L.Ed.2d 48 (1977), contains a dictum that notes from a cash basis taxpayer are not the equivalent of cash since such notes are merely a promise to pay which may not be fulfilled. The same result was reached in *Baltimore Dairy Lunch, Inc. v. United States*, 231 F.2d 870 (8th Cir. 1956). The note cases lend some support to the Tax Court's judgment here. The notes of the taxpayer in that case were said not to constitute payment for the purpose of a tax deduction. Similarly, the contract rights which G. Weisbart and Company gave to 7A Company as security for the final payment which was intended to be made in cash in 1969 cannot by any stretch of imagination be considered payment and a valid deduction.

Tested by the question as to when G. Weisbart and Company paid for the feed, the result is the same. The taxpayer was on the cash method. Hence the deduction was to be taken in the year in which cash or its equivalent was paid. Treas.Reg. § 1.446–1(c)(1)(i) (1973); *id.* § 1.461–1(a)(1) (1967). What is meant by the term "equivalent of cash"? This is held to be property other than cash which has a fair market value. In the case of an executory contract of sale in which payments are deferred and are evidenced only by the contracts, the deferred payments are ordinarily not taxed

to the cash basis seller until received. *See* 2 J. Mertens, The Law of Federal Income Taxation § 11.02 (1974). The cash equivalency rule is the same for items of income as it is for deductions. *Id.* § 11.01. Payments made under such a contract are not deductible by the purchaser who is on a cash basis until the actual payment.

The lack of substance found by the Tax Court in the transfer of the contracts brings the case within the rule applicable to executory contracts as described above. Hence a deduction is not to be allowed until the year of actual and final payment.

We conclude that the findings of the Tax Court are adequately supported as to the nature, character and legal effect of the transaction and, therefore, the judgment of the Tax Court should be and the same is hereby affirmed.