**Byron C. DALE, Plaintiff and Appellant,**

v.

**Dr. Charles L. PELTON, a/k/a Charles L. Pelton, Defendant and Appellee.**

**14679.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 8, 1985.

Decided March 27, 1985.

Byron C. Dale, pro se.

Steven Cowan of Von Wald Law Offices, Selby, for defendant and appellee.

WOLLMAN, Justice.

Plaintiff, Byron C. Dale, appeals from a summary judgment dismissing his action for damages against appellee, Charles L. Pelton. We affirm.

On December 13, 1980, the parties entered into what was denominated a "Cash Farm and Ranch Lease" whereby Pelton leased his Corson County farm to Dale "for an annual cash rent" of $8,000.00, each payment to be made on or before February 1 of the three years covered by the lease.

Among other things, the lease provided:

Lessor agrees that if lessee pays the above stipulated payments, on or before their due date, and performs the other conditions of this agreement, lessee shall have the peaceful use and possession of the said premises during the continuance of this lease term.

Dale paid Pelton the required cash rent in a timely manner in 1981 and again in 1982. In 1983, however, Dale was having financial problems. Accordingly, he and Pelton met at a restaurant in Mobridge on or about February 5 to discuss the 1983 cash rental payment. At that meeting Dale outlined his plan to pay Pelton in goods, that is, with cows from his ranch. Although the parties differ regarding their

recollections of Pelton's response to this "in kind" payment proposal, on February 7, 1983, Dale prepared, executed, and sent to Pelton an instrument that read as follows:

For 1983 Lease, Payment In Full. Date: February 7, 1983. The Undersigned Promise to Pay to Dr. Charles Pelton $8,000.00, Eight Thousand Dollars and no/100 Dollars. Payable at my ranch on NW ¼, 20-19-25 Corson County, South Dakota 57656 with 11 head of cows valued at $622.76 per cow. Void if not presented to payor for redemption in 60 days.

On February 10, 1983, Pelton wrote the following letter to Dale:

Enclosed is your promissory note to me for $8,000.00 dated February 7, 1983 and received February 8, 1983. I am unable to negotiate this note and must insist on payment of the Cash Farm and Ranch Lease dated 13th day of December 1980 as put forth in that agreement. The agreement is for an annual cash rent of $8,000.00 payable on or before February 1, 1983.

I am willing to extend the payment due date until February 15, 1983 providing payment in full of $8,000.00 cash is made on or before February 15, 1983 or we are able to negotiate a mutually agreeable cash payment agreement on or before February 15, 1983.

After the above date of February 15, 1983, you will be considered as being in default.

Hearing nothing from Dale by February 15, 1983, Pelton leased the premises to a third party.

On October 6, 1983, Dale commenced this action against Pelton, seeking $38,740.00 in compensatory damages and $200,000.00 in punitive damages. Dale made no request for a jury trial either in the complaint or in any subsequent pleading. The summons directed Pelton to answer Dale's complaint at his address of R.R. 2, Box 72, Timber Lake, SD 57656. On October 11, 1983, Pelton sent Dale a letter by certified mail that stated in part:

As per my letter of March 16, 1983 and my letter of February 10, 1983 you were in default on payment as of February 1, 1983. I made every effort to work with you on this lease and you did not even have the courtesy to contact me so I had no other option than to declare you in default. It was thus necessary for me to "re-enter and take full possession of the premises."

As far as breaching the contract, there was no contract between us in effect at the time that the land was released. Therefore, I am not liable for any damages of any type whatsoever.

I will be awaiting your reply to this letter which is being sent to you in response to a summons delivered to me by the Brown County Sheriff's Office on October 10, 1983....

On November 29, 1983, Dale made a motion for default judgment. Upon being served with this motion, Pelton contacted his attorney, who served a formal answer and counterclaim on Dale by mail on December 1, 1983. This pleading set forth Pelton's demand for jury trial. Following a hearing, the trial court, the Honorable Robert L. Tschetter presiding, denied the motion for default judgment, reasoning that Pelton's letter of October 11 constituted a legally sufficient answer. The trial court struck Pelton's counterclaim and demand for jury trial.

On July 13, 1984, the circuit court, the Honorable Warren G. Johnson presiding, entered summary judgment dismissing Dale's complaint, ruling that the only question presented by the pleadings, Dale's deposition testimony, and the affidavit submitted by Pelton was whether payment of the February 1, 1983, rental was a condition precedent to Dale's peaceful enjoyment of the premises from February 1, 1983, to November 1, 1983. After determining that this was a question of law, the trial court decided it adversely to Dale.

Although Dale has set forth some six separate issues in his brief, several are either rhetorical (*e.g.*, "Are the judges in this state bound by the Constitution of the

United States and the Constitution of South Dakota and South Dakota Codified Law?") or non-justiciable (*e.g.,* "If a doctor or lawyer can set his fees, cannot the farmer set his prices for his production?")

As nearly as we can tell from the body of Dale's brief, his only real argument is that he should not be required to exchange his real wealth, i.e., the increase of his ranching operation, into what he denominates "money" as a prerequisite to making a tender of the annual cash payment to Pelton that would satisfy the terms of the lease. As evidenced by the materials attached as an appendix to his brief, and as we have recently noted in another case involving Dale, *see Northwest S.D. Production Credit Ass'n v. Dale,* 361 N.W.2d 275 (S.D.1985), Dale has undertaken a study of this country's monetary system. As he did in that case, Dale in the instant case attempted to satisfy his financial obligations by tendering payment in a form other than that agreed upon at the time he incurred those obligations.

■ This is the type of case that is apt for disposition by motion for summary judgment, involving as it does only questions regarding the adequacy of payment under a written instrument. As we pointed out in *Wilson v. Great Northern Ry. Co.,* 83 S.D. 207, 157 N.W.2d 19 (1968), summary adjudication is especially appropriate in cases involving actions on notes and for debts. Likewise, in *Hughes-Johnson Co., Inc. v. Dakota Midland Hosp.,* 86 S.D. 361, 195 N.W.2d 519 (1972), we affirmed a summary judgment in an action brought to recover the balance due on a construction contract, pointing out that summary judgment is especially suited for disposition of claims that basically involve accounting problems. We think that the same considerations apply in the case before us. There is no dispute over the fact that Dale did not tender a cash payment of $8,000.00 to Pelton on or before February 1, 1983, or within the extension of time granted by Pelton's letter of February 10, 1983. That being the case, the only questions that remain are ones of law, i.e., whether Dale's

tender of payment as set forth in the instrument of February 7, 1983, constituted a legally sufficient compliance with the terms of the lease, and, if not, whether Dale's failure to make legally sufficient tender constituted a breach of a condition precedent to his further occupation of the leased premises.

■ We conclude that Dale's February 7, 1983, promise to pay the 1983 cash rental by transferring eleven cows to Pelton did not constitute a cash payment as contemplated by the terms of the lease. As the Supreme Court of Texas has held,

"cash" in its strict sense refers to coins and paper money. It is also used, less strictly, to mean not only money but also checks and demand deposits in banks and savings institutions.

*Stewart v. Selder,* 473 S.W.2d 3, 8 (Tex. 1971). A promissory note, even if fully secured, does not constitute cash or its equivalent. *Don E. Williams Co. v. Comm'r of Internal Revenue,* 429 U.S. 569, 97 S.Ct. 850, 51 L.Ed.2d 48 (1977); *Battelstein v. Internal Revenue Service,* 611 F.2d 1033 (5th Cir.1980).

Dale's February 7, 1983, promise to pay was nothing more than a promissory note secured by collateral. In no reasonable meaning of that word could it be considered the equivalent of cash.

■ Once it has been determined that Dale's tender as expressed in the instrument of February 7, 1983, was not legally sufficient to comply with his obligation to make the annual cash rental payment on or before February 1, 1983, or during the subsequently granted extension period, then it follows, as the trial court held, that Dale had failed to comply with the condition precedent to his continued occupation of the premises under the lease. SDCL 20–2–4 provides in part: "A condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed...."

SDCL 20–2–5 provides:

Before any party to an obligation can require another party to perform any act under it, he must fulfill all conditions precedent thereto imposed upon himself; and must be able, and offer, to fulfill all conditions concurrent, so imposed upon him, on the like fulfillment by the other party, except as provided by § 20–2–6.

The trial court correctly held that Dale's tender of February 7, 1983, did not satisfy the condition precedent set forth in the lease requiring the annual payment to be paid in cash.

In view of our holding that there was no genuine issue of material fact to be decided by a jury, we need not consider Dale's contention that the trial court improperly denied the request for jury trial.

The judgment is affirmed.

All the Justices concur.

WUEST, Circuit Judge, Acting as Supreme Court Justice, participating.