T.C. Summary Opinion 2015-21


UNITED STATES TAX COURT


JAMES F. MARRAN, JR., AND FRANCINE W. MARRAN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 30016-13S.                    Filed March 18, 2015.


James F. Marran, Jr., and Francine W. Marran, pro sese.

Derek S. Pratt, for respondent.


SUMMARY OPINION


ARMEN, Special Trial Judge: This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1] Pursuant to section 7463(b), the decision to be entered is not

---

[1] Unless otherwise indicated, all subsequent section references are to the
Internal Revenue Code in effect for 2011, the taxable year in issue.

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioners' Federal income tax of $812 for 2011.

The issue for decision is whether proceeds of $3,200 received by petitioners in 2011 from the settlement of a dispute are excludable from their gross income. We hold that such proceeds are not excludable.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the stipulated facts and related exhibits.

At the time that the petition was filed petitioners resided in the State of Arizona.

Petitioner Francine W. Marran was previously employed by North Scottsdale Pediatric Associates PC (NSPA). While so employed Mrs. Marran participated in an employer-sponsored retirement plan, and contributions to her plan account were made by NSPA.

Mrs. Marran's employment with NSPA ended in August 2008. For that year NSPA did not make any contribution to Mrs. Marran's retirement account.

Sometime after her employment with NSPA had ended, Mrs. Marran, along with petitioner James F. Marran, Jr., who was acting on his wife's behalf, became involved in a dispute with NSPA regarding the lack of a contribution to Mrs. Marran's retirement account for 2008.

In February 2011 NSPA and petitioners entered into a settlement agreement that resolved the parties' dispute. The agreement stated in relevant part as follows:

1.  NSPA recognizes a dispute concerning the defined benefit plan and the profit sharing plan for Fran Marran who ended her service with NSPA in August of 2008.

2.  Fran, thru her agent (her husband, James F. Marran, Jr. a.k.a. "Jay Marran"), believes she should have been entitled to a benefit under the NSPA retirement plans for 2008, based on IRS rules governing Top Heavy plans.

3.  NSPA believes it was within its rights to terminate the Defined Benefit Plan and make no retirement plan contributions for 2008. Survival of the business was dependent on the ability to cut costs, therefore, no retirement contributions were made for 2008 across the board for all employees and this decision favored no class of employee. There was widespread awareness of this by all those in management roles and NSPA and notice was provided. The view that no retirement plan contributions were required for 2008 was supported by Bob Bessen, the actuary and third party administrator for the Defined Benefit Plan and the corporate attorney, Tom Lawless, and many communications regarding the basis for this position have been documented by Tom Lawless.

4.  Jay Marran did file a complaint with the Dept. of Labor who conducted an investigation and found no evidence of wrongdoing.  Upon persistent requests from Mr. Marran, the matter has been turned over to the IRS.  Nearly a year has passed and no investigation by the IRS has occurred.

5.  Mr. Marran continues to make requests to NSPA regarding this dispute.

6.  In an attempt to end the dispute, NSPA Board  has offered a payment of $3,200 to Fran Marran based on an estimate of the contribution Fran would have received under the NSPA profit sharing plan if a 2008 contribution had been made equal to 5% of her 2008 compensation plus a realistic rate of return.

7.  This offer of $3,200 is contingent upon the following:
   a.  The Marrans agree to withdraw their complaint.
   b.  Since the Marrans have no control over the actions of the IRS, in the event the IRS should conduct an investigation and require a 2008 contribution to a NSPA retirement plan, the Marrans agree to return this payment of $3,200 to NSPA upon receipt of evidence that the apportioned contribution has been made to the NSPA Profit Sharing Plan and that Fran would receive the apportioned contribution from the NSPA Profit Sharing Plan.
   c.  The Marrans agree that this offer is confidential.
   d.  The Marrans agree to consider this matter resolved.
   e.  The Marrans agree to this offer in writing.

8.  This offer does not in any way indicate that NSPA agrees with the Marrans' position that a contribution and/or benefit was required to be made to a retirement plan for 2008.

9.  Upon receipt of this agreement signed by both Fran and Jay Marran, with each of their signatures witnessed by a notary, NSPA will issue a check to Francine Marran within 5 business days and the check will be sent to the address listed below.

For payment of $3,200 to Francine Marran from NSPA, we, Francine and Jay Marran (the "Marrans"), understand and agree to all of the conditions listed in section 7 of this Agreement.

Pursuant to the settlement agreement, NSPA issued a check for $3,200 to Mrs. Marran in February 2011. Mrs. Marran received the check, negotiated it, and was thereafter free to use the proceeds for any purpose she deemed appropriate.

NSPA issued a Form 1099-MISC, Miscellaneous Income, for 2011 reporting that Mrs. Marran had received $3,200 in that year.

Petitioners timely filed a Form 1040, U.S. Individual Income Tax Return, for 2011. They did not include the $3,200 payment from NSPA in income, nor did they otherwise disclose the receipt of such payment.

## Discussion[2]

Section 61(a) provides generally that "gross income means all income from whatever source derived". Gross income is an inclusive term with broad scope, designed by Congress to "exert * * * 'the full measure of its taxing power.'" Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429 (1955) (quoting Helvering v. Clifford, 309 U.S. 331, 334 (1940)). In contrast, exclusions from income are matters of legislative grace and are narrowly construed, Commissioner

---

[2] The Court decides the issue in this case without regard to any burden of production or burden of persuasion. See secs. 6201(d), 7491(a).

v. Schleier, 515 U.S. 323, 328 (1995), and taxpayers seeking an exclusion from income must be "within the clear scope of the exclusion", Dobra v. Commissioner, 111 T.C. 339, 349 n.16 (1998).

Petitioners argue that "[t]he settlement payment simply restored Francine to the position she was in prior to NSPA's adverse action against her" and that, as a consequence, such payment is not includable in their income.

If NSPA had made a contribution to Mrs. Marran's retirement account in 2008, such contribution would not have been immediately taxable to her, but distributions from the retirement account thereafter would most certainly have been. See secs. 72, 402. But the fact of the matter is that NSPA did not make any contribution to Mrs. Marran's retirement account. Rather, NSPA made a payment to Mrs. Marran directly, and it was she who negotiated the check and acquired dominion and control over the proceeds with the right to do with those proceeds as she wished. As the Supreme Court instructs, we give effect to what *actually* happened and not what *might* have happened. Don E. Williams Co. v. Commissioner, 429 U.S. 569, 579 (1977) (citing Commissioner v. Nat'l Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 148-149 (1974)). Thus, petitioners' argument that the $3,200 payment was excludable from gross income as an employer contribution to a retirement plan is unsupportable.

## Conclusion

The Court has considered all of the arguments advanced by petitioners, and to the extent not expressly addressed, the Court concludes that those arguments are without merit, irrelevant, or moot.

In sum, the $3,200 payment received in 2011 by Mrs. Marran is not excludable from petitioners' gross income. Respondent's deficiency determination is therefore sustained.

To give effect to our disposition of the disputed issue,

Decision will be entered for

respondent.