T.C. Memo. 2017-48

UNITED STATES TAX COURT

MUHIEDDIN A. GHAZAWI AND GHADA GHAZAWI, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4750-15.                          Filed March 22, 2017.

<u>Charles A. Rose</u>, <u>Stephen A. Sherman</u>, and <u>James B. Martin, Jr.</u>, for petitioners.

<u>Diana N. Wells</u> and <u>Denise A. Diloreto</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, <u>Judge</u>:  Respondent issued a notice of deficiency to petitioners determining deficiencies in income tax, an addition to tax, and accuracy-related penalties as follows:[1]

---

[1]Unless otherwise indicated, all section references are to the Internal
(continued...)

| [*2] Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|---|---|---|---|
| 2011 | $300,834 | $60,167 | $60,167 |
| 2012 | 137,354 | --- | 27,471 |

The threshold issues for decision are whether Ghada, Inc. (Ghada),

Muhieddin Ghazawi's (Mr. Ghazawi) wholly owned S corporation, failed to report

$222,818 of gross receipts for 2012 and is entitled to reduce gross receipts by

$2,126,954 and $1,936,558 of cost of goods purchased for resale (COGS) for 2011

and 2012, respectively.[2]  The additional issues for decision are whether

petitioners:  (1) failed to report $876,952 and $373,522 of nonpassive income

from Ghada for 2011 and 2012, respectively; (2) are entitled to deduct $69,104

and $71,148 of mortgage interest expenses reported on Schedules E, Supplemental

Income and Loss, for 2011 and 2012, respectively; and (3) are liable for accuracy-

related penalties under section 6662(a) for 2011 and 2012.[3]

---

[1](...continued)
Revenue Code (Code) in effect for the taxable years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

[2]These are the amounts of COGS petitioners claimed; they exceed the amounts respondent determined in the notice of deficiency of $1,298,219 and $1,779,449 for 2011 and 2012, respectively.

[3]At trial respondent conceded that Ghada did not fail to report $171,101 of

(continued...)

[*3]                                    FINDINGS OF FACT

Some of the facts are stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioners resided in Kentucky when the petition was filed.

During 2011 and 2012, the taxable years at issue, Mr. Ghazawi was the sole owner of Ghada.  Ghada operated a convenience store, Dino's Food Mart 2 (Dino), which sold gasoline, lottery tickets, and groceries.  On October 31, 2012, Ghada sold all of its assets (including Dino) to Samer, LLC (Samer), Ghada Ghazawi's wholly owned S corporation.  Ghada filed Forms 1120S, U.S. Income Tax Return for an S Corporation, for the taxable years at issue and on the forms indicated that it reported income and expenses on an accrual basis for Federal income tax purposes.  During the taxable years at issue Ghada maintained two checking accounts at Republic Bank, accounts ending in 4136 and 4144 (hereinafter account 4136 or account 4144).  Both accounts were held open in Ghada's name for the duration of the taxable years at issue, notwithstanding Ghada's sale of assets to Samer.

---

[3](...continued)
sec. 1231 gain for 2012.  After trial petitioners conceded:  (1) in their opening brief that Ghada failed to report $11,793 of income from lottery commissions for 2011 and (2) in their answering brief that they are liable for an addition to tax under sec. 6651(a)(1) for 2011.

**[*4]** Petitioners filed joint returns for the taxable years at issue and reported $61,446 and $36,553 of nonpassive income from Ghada's Schedules K-1, Shareholder's Share of Income, Deductions, Credits, etc., for 2011 and 2012, respectively. Petitioners' returns were prepared by Monger & Co., an accounting and bookkeeping firm. Nyenatee Monger, an accountant, bookkeeper, and owner of Monger & Co., was either the preparer or the third-party designee of petitioners' returns for the taxable years at issue. Mr. Monger generated profit and loss summaries for petitioners using Ghada's bank statements and monthly cash register tapes.

On November 20, 2014, respondent sent petitioners a notice of deficiency for tax years 2011 and 2012 that made no adjustment to Ghada's 2011 reported gross receipts but determined by using a bank deposits analysis of Ghada's accounts 4136 and 4144 that Ghada had failed to report $222,818 of gross receipts for 2012. The notice of deficiency also disallowed $828,735 and $157,109 of Ghada's reported COGS for 2011 and 2012, respectively.[4] On the basis of respondent's adjustments to Ghada's gross receipts and COGS, the notice of deficiency determined that petitioners had failed to report income from Ghada.

---

[4]As stated supra note 2, respondent determined COGS of $1,298,219 and $1,779,449 for 2011 and 2012, respectively.

**[*5]**   For the taxable years at issue petitioners claimed mortgage interest expense deductions for interest paid on two loans, loan accounts 5906 and 5907 (hereinafter loan 5906 or loan 5907).  Petitioners claimed Schedule E expense deductions of $69,104 for "mortgage interest paid to banks, etc." for 2011.  Petitioners claimed deductions of $71,148 on Schedule A, Itemized Deductions, for "Points not reported to you on Form 1098" (hereinafter Schedule A points) for 2012.  Respondent's notice of deficiency allowed $42,641 of petitioners' interest paid for 2011--$34,357 and $8,284 for interest paid on loans 5906 and 5907, respectively--and disallowed all of petitioners' Schedule A points for 2012.  Petitioners timely filed a petition for redetermination of the deficiencies.

Petitioners did not introduce documentation, other than bank statements, to verify Ghada's reported gross receipts for 2012.  We will discuss the gross receipts issue later in our opinion.  Petitioners introduced documents to substantiate Ghada's claimed COGS for the taxable years at issue.  Petitioners' documentation included bank statements for accounts 4136 and 4144 from 2011 and 2012 with images of checks written from those accounts; copies of deposits made to accounts 4136 and 4144 for 2012; A&M Oil Co.'s (A&M Oil) customer ledgers for Dino from 2011 and 2012; statements from Lambert's Distributors, Inc. (Lambert), reflecting various transactions with Dino during 2010-13; invoices from Anheuser

**[*6]** Busch for 2011-13; and modified copies of Ghada's QuickBooks reports for account 4136. We find that petitioners' documentation substantiates that Ghada incurred $1,717,571 and $1,490,651 of COGS for 2011 and 2012, respectively.[5] These amounts are less than the amounts petitioners claimed, and only COGS for 2011 is more than the amount respondent determined; COGS for 2012 is less than the amount respondent determined.

Before trial petitioners stipulated that they were not entitled to a $71,148 Schedule A points deduction for 2012. After trial on March 9, 2016, petitioners made a motion to conform the pleadings to the evidence to assert a Schedule E interest paid deduction. On May 12, 2016, this Court under Rule 41(b)(1) granted petitioners' motion to conform the pleadings to the evidence, which allowed petitioners to assert, as though pleaded on their original petition, that they were entitled to a $71,148 Schedule E interest paid deduction for 2012.

Petitioners introduced the following documentation to support their claimed interest paid deductions for 2011 and 2012: (1) loan master reports for loans 5906 and 5907 from 2011 and 2012 showing the transaction dates, principal and interest

---

[5]COGS for 2011 comprises $1,035,865 from A&M Oil, $565,000 from Lambert, and $116,706 from Anheuser Busch; and COGS for 2012 comprises $921,515 from A&M Oil, $494,067 from Lambert, and $75,069 from Anheuser Busch.

[*7] amounts, and a description of the payments; (2) various monthly bank statements from petitioners' personal bank account for 2011; and (3) a variety of check images in conjunction with those bank statements (hereinafter collectively loan documentation). Petitioners did not introduce any additional documentation for their claimed interest paid deductions for 2012. We find that petitioners' loan documentation substantiates that they made the following payments in 2011:

| Loan master report transaction date | Bank account 9757 check No. | Interest allocated to loan account 5906 |
|---|---|---|
| Mar. 3, 2011 | 101 | $5,218 |
| May 4, 2011 | 115 | 5,210 |
| July 11, 2011 | 142 | 5,206 |
| Aug. 4, 2011 | 144 | 5,202 |
| Sept. 12, 2011 | 222 | 5,197 |
| Dec. 9, 2011 | 225 | 5,185 |

No documentation was introduced to substantiate that petitioners were the payors of the remaining interest payments--some payments were made in cash (and were not substantiated), and other payments came from check numbers associated with Ghada's bank accounts. Accordingly, we find as fact that petitioners paid interest of $31,218 and zero for 2011 and 2012, respectively.

**[*8]**                                        OPINION

## I.     Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally

presumed correct, and the taxpayer ordinarily bears the burden of proving those

determinations erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115

(1933).  For cases appealable to the Court of Appeals for the Sixth Circuit, such as

the current case, the Commissioner may not rely on the presumption of correctness

with regard to a determination of unreported income unless that determination is

supported by a "minimal evidentiary foundation".  United States v. Walton, 909

F.2d 915, 919 (6th Cir. 1990) (quoting Weimerskirch v. Commissioner, 596 F.2d

358, 361 (9th Cir. 1979), rev'g 67 T.C. 672 (1977)); see Golsen v. Commissioner,

54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971).

Respondent has met this burden by introducing a bank deposits analysis for

Ghada's bank accounts that indicates Ghada received unreported income.  Thus

respondent's determinations in the notice of deficiency are entitled to their general

presumption of correctness; and petitioners bear the burden of proving by a

preponderance of the evidence that respondent's determinations of unreported

income are arbitrary or erroneous.  See Helvering v. Taylor, 293 U.S. 507, 515

(1935); Estate of Mason v. Commissioner, 64 T.C. 651, 656-657 (1975), aff'd, 566

**[\*9]** F.2d 2 (6th Cir. 1977).  The taxpayer may prove that the Commissioner's reconstruction of his income is in error, in whole or in part, by proving that a deposit is nontaxable.  See Clayton v. Commissioner, 102 T.C. 632, 645 (1994).  The evidence does not establish that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact.

Deductions are a matter of legislative grace; the taxpayer bears the burden of proving entitlement to deductions allowed by the Code and of substantiating expenses underlying claimed deductions by keeping and producing records sufficient to enable the Commissioner to determine the correct tax liability.  Sec. 6001; INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Commissioner, 292 U.S. 435, 440 (1935); sec. 1.6001-1(a), (e), Income Tax Regs.

The Commissioner bears the burden of production with respect to any accuracy-related penalties under section 6662.  See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once the burden of production is met, the taxpayer bears the burden of proof, including the burden of proving reasonable cause for his or her underpayment of Federal income tax.  See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

[*10] II.     Ghada's Returns

     A.     Gross Receipts

Section 61(a) defines "gross income" as "all income from whatever source derived", including "[g]ross income derived from business". Sec. 61(a)(2). This definition is construed broadly and has "been held to encompass all 'accessions to wealth, clearly realized, and over which the taxpayers have complete dominion.'" James v. United States, 366 U.S. 213, 219 (1961) (quoting Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955)). A taxpayer has dominion and control over an account when the taxpayer has the freedom to use its funds at will. See Rutkin v. United States, 343 U.S. 130, 136-137 (1952).

Petitioners were required, but failed, to maintain adequate books and records establishing the amounts of their gross income. See sec. 6001; Petzoldt v. Commissioner, 92 T.C. 661, 686 (1989); sec. 1.446-1(a)(4), Income Tax Regs. When a taxpayer fails to keep adequate books and records, the Commissioner is authorized to determine the existence and amount of the taxpayer's income and may appropriately employ the bank deposits method to estimate the taxpayer's income. Sec. 446(b); Petzoldt v. Commissioner, 92 T.C. at 693; Estate of Mason v. Commissioner, 64 T.C. at 656-657. The Commissioner has great latitude in reconstructing a taxpayer's income, and the reconstruction need only be

[*11] reasonable in the light of all surrounding facts and circumstances. Petzoldt v. Commissioner, 92 T.C. at 687.

Bank deposits are prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, 64 T.C. at 656-657. The bank deposits method assumes that all deposits into a taxpayer's account are taxable unless the taxpayer can show that the deposits are nontaxable, and "the Government must take into account any non-taxable source * * * of which it has knowledge." Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964); see DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).

Respondent's revenue agent employed the bank deposits method to reconstruct Ghada's income because she determined Ghada's records were incomplete as a result of Ghada's significant use of cash. The revenue agent used Ghada's bank account statements (which are part of the record) to prepare a bank deposits analysis, excluding all nontaxable receipts of which she was aware. Respondent reasonably relied on the bank deposits method to determine Ghada's taxable income on which petitioners' resulting income tax deficiencies are based.

Petitioners contend that they did not fail to report $222,818 of gross receipts for 2012: They maintain that the deposits received in November and December

[*12] 2012 are not attributable to Ghada because Ghada sold all of its assets to Samer on October 31, 2012, and therefore those gross receipts are properly attributable to Samer. Petitioners did not introduce any documentation, such as proof of signatory authority over the Ghada bank accounts, a sales contract, or any other credible evidence, to prove that the gross receipts received in November and December 2012 are attributable to Samer or were properly included on Samer's 2012 tax return. Further, accounts 4136 and 4144 were both held open in Ghada's name from January 1, 2011, until December 31, 2012, including after Ghada's sale of assets to Samer on October 31, 2012. Ghada had complete dominion and control over the accounts for the taxable years at issue. Accordingly, petitioners failed to prove that respondent's reconstruction of Ghada's income was in error. All taxable deposits into accounts 4136 and 4144 for 2012 are therefore properly included in the calculation of Ghada's 2012 gross receipts, and we sustain respondent's determinations of unreported income consistent with the revenue agent's bank deposits analysis.

B.    COGS

Section 162(a) allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". An accrual basis taxpayer, such as Ghada, is allowed a deduction

[*13] during the taxable year in which the expenses are incurred. The cost of goods purchased for resale, with proper adjustment for opening and closing inventories as determined in accordance with the taxpayer's method of accounting, "is not a deduction within the meaning of sec. 162(a) but is subtracted from gross receipts in determining a taxpayer's gross income." Olive v. Commissioner, 139 T.C. 19, 20 n.2 (2012), aff'd, 792 F.3d 1146 (9th Cir. 2015); see sec. 1.162-1(a), Income Tax Regs.

Petitioners' documentation substantiates that they incurred $1,717,571 and $1,490,651 of COGS for 2011 and 2012, respectively. We do not find the modified copy of the QuickBooks to be credible documentation of petitioners' COGS. We therefore hold that petitioners substantiated and are thus entitled to $1,717,571 of COGS for 2011; petitioners have not substantiated COGS in excess of respondent's determination for 2012 and are therefore entitled to the amount of COGS respondent determined in the notice of deficiency for 2012.

III.    Petitioners' Unreported Gross Income for 2011 and 2012

Section 1366(a)(1) provides that an S corporation shareholder determines his or her tax liability by taking into account his or her pro rata share of the S corporation's income, losses, deductions, and credits for the S corporation's taxable year ending with or in the shareholder's taxable year.

**[\*14]**  We hold that petitioners received unreported nonpassive income from Ghada as will be determined under Rule 155, taking into consideration:  (1) respondent's concession as to Ghada's section 1231 gain for 2012, (2) petitioners' concession as to Ghada's income from lottery commissions for 2011, and (3) our holdings regarding Ghada's gross receipts for 2012 and COGS for 2011 and 2012.

IV.    Petitioners' Schedule E Mortgage Interest Expense for 2011 and 2012

Section 163(a) generally permits a deduction for all interest paid or accrued within the taxable year on indebtedness.  Cash basis taxpayers, such as petitioners, are allowed a deduction for interest paid during the taxable year in cash or its equivalent.  See Don E. Williams Co. v. Commissioner, 429 U.S. 569, 577-578 (1977); Heyman v. Commissioner, 70 T.C. 482, 485 (1978), aff'd, 652 F.2d 598 (6th Cir. 1980).

Petitioners' loan documentation substantiates that they paid interest of $31,218 and zero for 2011 and 2012, respectively.  We therefore find that petitioners are not entitled to an interest paid deduction for 2011 or 2012 in excess of respondent's determinations in the notice of deficiency.

[*15] V.     Section 6662(a) Penalties for Tax Years 2011 and 2012

Section 6662(a) and (b)(2) imposes an accuracy-related penalty on any portion of an underpayment of Federal income tax that is attributable to the taxpayer's "substantial understatement of income tax".

An understatement of Federal income tax is substantial if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). If the Rule 155 computations confirm substantial understatements for the taxable years at issue, then respondent has met his burden of producing evidence that the penalties are justified. See sec. 7491(c). Once respondent has met his burden, petitioners may avoid section 6662(a) accuracy-related penalties if they can demonstrate (1) reasonable cause for each underpayment and (2) that they acted in good faith with respect to each underpayment. See sec. 6664(c)(1). A determination of reasonable cause and good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances." See sec. 1.6664-4(b)(1), Income Tax Regs.

For purposes of section 6664(c), a taxpayer may establish reasonable cause and good faith with respect to the amount of tax liability reported on a return, thereby negating a section 6662 accuracy-related penalty, by showing his

[*16] reliance on professional advice. Sec. 1.6664-4(b)(1), Income Tax Regs. We stated in Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002), that

> for a taxpayer to rely reasonably upon advice so as possibly to negate a section 6662(a) accuracy-related penalty determined by the Commissioner, the taxpayer must prove by a preponderance of the evidence that the taxpayer meets each requirement of the following three-prong test: (1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment. * * *

Petitioners assert that they acted with reasonable cause and in good faith with respect to their underpayment for each year by (1) hiring Mr. Monger, (2) providing Mr. Monger with information necessary for keeping accurate records and preparing tax filings, (3) and ultimately relying on Mr. Monger's advice when filing their tax returns.

When interpreting the meaning of advice, this Court has looked to the definition of the term in section 1.6664-4(c)(2), Income Tax Regs.:

> (2) Advice defined.--Advice is any communication, including the opinion of a professional tax advisor, setting forth the analysis or conclusion of a person, other than the taxpayer, provided to (or for the benefit of) the taxpayer and on which the taxpayer relies, directly or indirectly, with respect to the imposition of the section 6662 accuracy-related penalty. Advice does not have to be in any particular form.

[*17] See Woodsum v. Commissioner, 136 T.C. 585, 592-593 (2011).  When a taxpayer asserts reliance on "advice" from a competent professional as an affirmative defense to an addition to tax or a penalty, the Supreme Court has held that advice must consist of "substantive advice" reflecting an adviser's analysis or conclusion, as opposed to a nonprofessional function which "requires no special training".  See United States v. Boyle, 469 U.S. 241, 251-252 (1985); Woodsum v. Commissioner, 136 T.C. at 593 (citing Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 99).

Petitioners have not proven that Mr. Monger provided substantive advice with respect to any of the items reported on petitioners' tax returns for the taxable years at issue.  Both Mr. Monger's and petitioners' relevant testimony established that (1) Mr. Monger merely reported Ghada's income from the information that petitioners provided to him, (2) Mr. Monger determined Ghada's COGS from Ghada's bank statements and vendor invoices/logs, and (3) petitioners told Mr. Monger the amounts they wanted to report as rental expenses.  There is no evidence that Mr. Monger provided substantive advice setting forth an analysis or conclusion on which petitioners relied.  We find that petitioners have not established reasonable cause and good faith as a defense to the accuracy-related penalties.  We therefore hold that if Rule 155 computations confirm substantial

**[*18]** understatements of income tax, petitioners are liable for penalties for underpayments attributable to substantial understatements of income tax under section 6662(a) and (b)(2).

We have considered all the other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.